Laurence **HURD**, Plaintiff–Appellant,

v.

Eloy **MONDRAGON**, Warden and Attorney General for the State of New Mexico, Defendant–Appellee.

No. 87–1354.

United States Court of Appeals, Tenth Circuit.

July 7, 1988.

---

Glen R. Anstine, Denver, Colo., for plaintiff-appellant.

Anthony Tupler, Asst. Atty. Gen. (Hal Stratton, Atty. Gen., with him on the brief), Santa Fe, N.M., for defendant-appellee.

Before SEYMOUR, MOORE, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Laurence Hurd, a state prisoner, brought the present action pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of New Mexico against Eloy Mondragon, the warden of the state penitentiary of New Mexico wherein Hurd is incarcerated, and the Attorney General of New Mexico, alleging, generally, that his state conviction and resultant confinement violated the United States Constitution. The federal district court denied relief and dismissed the petition with prejudice. Hurd appeals.

Although the sequence of events may well present "a procedural maze of enormous complexity," [1] we must set forth the background facts in considerable detail. Once that is done, the disposition of this appeal, in our view, becomes apparent.

Hurd was charged in a New Mexico state court with the armed robbery of a state bank in Hobbs, New Mexico. At trial, it was the state's theory of the case that Hurd remained in his car while his two associates robbed the bank with firearms and that Hurd then drove the getaway car.[2]

An alarm went off while the robbery was in progress to the end that the police arrived only a few minutes after the robbers left. A key government witness, Michelle Coutee, was in a parking lot near the bank at the time of the robbery. When the police arrived, she informed them that she had seen a "cream-colored Landau-type vehicle" pull out of the parking area, and just before the vehicle left the lot she had observed two "Spanish males" place some articles in the trunk of the vehicle and then get into the vehicle, which was driven by a third "Spanish male."

From the information given the police by Ms. Coutee, a report went out over the police radio describing a possible getaway car as a "cream-colored Landau-type vehicle" occupied by three Spanish males. About ten minutes after the robbery, police espied a vehicle matching the description given by Ms. Coutee, but the vehicle contained a black driver and two Spanish male passengers. The police stopped the car and, with drawn guns, ordered the three occupants out of the vehicle. They then asked Hurd, who was the driver, if they could search the interior of the car and, according to the police, Hurd agreed. Finding nothing of interest therein, the police then asked Hurd if they could search the trunk. According to the police, Hurd consented and gave them the keys to the trunk.[3] A search of the trunk revealed a piece of cardboard on the left hand side of the trunk, and under the cardboard was a sack containing currency taken in the robbery, two guns and false mustaches.

At trial, Hurd was represented by a court-appointed attorney. Prior to trial, counsel filed a motion to suppress the use at trial of the items seized in the search of the trunk of Hurd's vehicle. The basis for the motion was counsel's belief that the police did not have reasonable grounds to stop the vehicle because the police observed that there were two Spanish males and one black male in the car, whereas Ms.

---

1. A phrase used by Justice Stevens in his concurring opinion in *Murray v. Carrier,* 477 U.S. 478, 497, 106 S.Ct. 2639, 2651, 91 L.Ed.2d 397 (1986).

2. The two who entered the bank and committed the robbery pleaded guilty, and only Hurd proceeded to trial.

3. Hurd, according to his trial counsel, initially stated that he consented to the search of his vehicle because "he had nothing to hide." Later, on reflection, Hurd indicated to his counsel that the fact that the officers had drawn their guns "coerced" him into granting consent to search.

Coutee had earlier advised the police that there were three Spanish males in the car. The unlawful stop, according to counsel, "tainted the fruit" obtained in the ensuing search. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Hurd testified at the hearing on the motion to suppress and stated that although he had allowed the police to search the trunk of his vehicle, and gave them the key to open the trunk, he was "coerced" by the presence of police with drawn weapons. The district court, after hearing, denied the motion to suppress, holding that, all things considered, the police had reasonable grounds to stop the vehicle, notwithstanding the fact that the driver was a black male and not a Spanish male, and further that Hurd's consent was voluntary.

Ms. Coutee testified at trial and identified Hurd as the driver, but admitted that she initially believed the driver of the vehicle was a Spanish male. In this connection, after the police had stopped the vehicle and discovered the money taken in the robbery, as well as the guns and false mustaches, Ms. Coutee and certain bank officials were driven to the scene of the stop by other police. Ms. Coutee, while seated in a police car, observed Hurd and identified him at that time as the driver.

At the conclusion of the state's case, defense counsel moved for a directed verdict, based on the variance between Ms. Coutee's testimony in court and her earlier statement to the police concerning the driver of the vehicle. The motion was denied. Hurd then testified in his own behalf and stated that he and the two who robbed the bank had driven in his car from Carlsbad, New Mexico, to Hobbs, New Mexico, looking for work in the oil fields. He further testified that when he got out of the car to make a telephone call from a convenience store, the other two drove off and then returned in a few minutes and that the three were leaving Hobbs when they were stopped by the police. Hurd testified that he knew nothing about any robbery. One of the two robbers testified in Hurd's be-

half, and he corroborated Hurd's testimony.

The jury convicted Hurd, and he was given a sentence of ten years imprisonment. Hurd appealed his conviction, and his trial counsel filed a docketing statement in the New Mexico Court of Appeals and then withdrew from the case.

Trial counsel listed two grounds for reversal in the docketing statement: (1) error by the trial court in denying Hurd's motion to suppress, and (2) error by the trial court in denying Hurd's motion for a directed verdict at the close of the state's case. After trial counsel withdrew, Hurd was represented on appeal by the state public defender's office.

The New Mexico Court of Appeals placed Hurd's appeal on its summary calendar. Counsel then filed a memorandum in opposition to summary affirmance and a motion to amend the docketing statement. In this latter connection, counsel sought to amend the docketing statement so as to include an objection to Ms. Coutee's in-court identification of Hurd as the driver of the getaway car, as the product of an impermissibly suggestive show-up arranged by the police at the scene where they stopped Hurd's vehicle. Such, argued counsel, was fundamental error.

The New Mexico Court of Appeals denied Hurd's motion to amend the docketing statement and affirmed Hurd's conviction in a four-page memorandum opinion. Hurd's motion for reconsideration was denied by the Court of Appeals, and a petition for certiorari was denied by the New Mexico Supreme Court.

In this general setting, Hurd, pursuant to 28 U.S.C. § 2254, filed a *pro se* petition for habeas corpus in the United States District Court for the District of New Mexico. In that petition, Hurd listed *no* ground for relief. At this point, a federal public defender entered an appearance for Hurd and by amended petition listed the following two issues: (1) whether the in-court identification of Hurd was the result of an impermissibly suggestive show-up which deprived Hurd of his due process rights to a fair trial; and (2) whether Hurd's Fourth

Amendment rights were violated by the search of his vehicle in that (a) the police had no probable cause or reasonable suspicion to stop the vehicle and (b) Hurd did not voluntarily consent to the search of his vehicle.

Mondragon, the warden of the State Penitentiary where Hurd was incarcerated, filed an answer wherein he alleged that Hurd's confinement was lawful. As concerns the first issue raised by Hurd in his amended petition, i.e., impermissibly suggestive show-up, the warden alleged that under the doctrine of deliberate procedural bypass without "cause" therefor, such was not a ground for federal habeas corpus relief, citing *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) and *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 *reh'g denied*, 456 U.S. 1001, 102 S.Ct. 2286, 73 L.Ed.2d 1296 (1982), and that the second issue raised by Hurd in his amended petition, i.e., unlawful search of his car, was also not a ground for federal habeas corpus relief under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 *reh'g denied*, 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976), Hurd having been afforded a full and fair hearing on that issue in the state court. Hurd then filed a "Memorandum on Procedural Default and Stone v. Powell."

The matter was assigned to a magistrate for proposed findings and recommendation. The magistrate ordered Hurd's state trial counsel deposed, and a transcript of that deposition was the only evidentiary matter before the magistrate when he made his report. Based on that deposition and the considerable documentary evidence before him, the magistrate made certain proposed findings and recommended that the petition be dismissed with prejudice. Specifically, the magistrate found that Hurd had exhausted his state post-conviction remedies on the two issues set forth in his amended petition as grounds for federal habeas corpus relief. Further, in his proposed findings the magistrate found that the failure by trial counsel to make an impermissibly suggestive show-up argument in state court was a tactical decision by counsel based on his understanding of the law and

his experience in trying some 75 to 100 criminal cases and, under *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), such was not a ground for federal habeas corpus relief. The magistrate further found that Hurd had a full and fair hearing in the state court on the unlawful search of his car issue and that, under *Stone v. Powell, supra*, and *Sanders v. Oliver*, 611 F.2d 804 (10th Cir.1979), *cert. denied*, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980), Hurd could not receive "collateral relief" on that ground in federal court.

After the magistrate filed his proposed findings and recommended decision, the federal public defender filed a motion to withdraw the petition without prejudice. The district court denied the motion to withdraw without prejudice, approved the findings of the magistrate, and dismissed the petition with prejudice. Counsel then filed a motion for reconsideration and asked that the motion to withdraw be treated as objections to the magistrate's proposed findings and recommendation. These motions were denied. This appeal follows.

On appeal, Hurd is represented by new counsel appointed by this court, and he identifies the issues on appeal as follows:

■ The district court erred by not dismissing Hurd's petition on the grounds that he had not exhausted his state remedies.

■ The district court erred in denying Hurd's motion to withdraw his petition without prejudice and by dismissing his petition with prejudice.

## I. *Exhaustion*

■ As indicated, Hurd's first ground for reversal is that the district court erred in finding that he had exhausted his state remedies. In this regard Hurd asserts that although he may have exhausted his state remedies on the two grounds asserted in his petition as grounds for relief, he has another possible ground for relief, which he did not assert in his amended petition, based on ineffective assistance of trial

328

counsel, and that such potential ground for relief has not been exhausted in state court. We are not in accord with this reasoning.

The doctrine of exhaustion of state remedies, as we understand it, is that a state prisoner must exhaust the remedies provided him by the state in connection with the issues which he presents in federal court as grounds for federal habeas corpus relief. In his amended petition, Hurd alleged that he *had* exhausted his state court remedies in connection with the two issues which he had set forth in his amended petition as grounds for federal habeas corpus relief. The warden in his answer did not claim non-exhaustion and the magistrate in his proposed findings found exhaustion and the district court adopted that finding. We find no error in this holding.

The present case is not a duplicate of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In *Rose* the petitioner alleged four specific grounds for relief. The district court found that the third and fourth grounds had not been exhausted, but the first two grounds were exhausted and granted relief on those grounds. The Sixth Circuit affirmed. The Supreme Court reversed, holding that where a federal habeas corpus petition filed by a state prisoner contains both "exhausted" and "unexhausted" grounds for relief, a district court must dismiss the petition. In the instant case, the two grounds for relief set forth in the amended petition had, by agreement of all concerned, been exhausted; and that finding cannot be upset by any hindsight statement by petitioner on appeal that he has another possible ground for relief which has not been previously asserted in any court. In short, the district court did not commit error in approving and adopting the magistrate's recommended finding that Hurd had exhausted his state court remedies on the two grounds for relief set forth in the petition.

## II. *Motion to Withdraw*

■ As indicated, after the magistrate had filed his proposed findings and recommended decision, Hurd filed a "motion to withdraw his petition without prejudice," stating that under the holding of *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), decided by the United States Supreme Court on June 26, 1986, some three months *prior* to the magistrate's findings, it became necessary to go back to the New Mexico state courts and present the issue of whether his trial counsel was "ineffective" within the meaning of the Sixth Amendment in failing to present and preserve in state courts the in-court identification issue, as well as the search and seizure issue.

In this regard, counsel's reasoning, as we understand it, runs as follows: (1) Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, *reh'g denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977), a state prisoner in a federal habeas corpus proceeding cannot obtain relief based on a violation of a right secured him under the United States Constitution where there was not a timely objection by counsel in the state trial, absent a showing that there was "cause" for the failure to timely object and a further showing of "actual prejudice." (2) This court, in *Runnels v. Hess*, 653 F.2d 1359 (10th Cir.1981), indicated that ineffective assistance of counsel short of that necessary to make out a Sixth Amendment claim could satisfy the "cause prong" of *Wainwright v. Sykes*. (3) Counsel in the federal district court was proceeding on the assumption that "cause" in the instant case could be shown by trial counsel conduct which was something short of a violation of the Sixth Amendment. (4) The Supreme Court in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), held that the inadvertent failure of competent trial counsel to make timely objection and thereafter pursue it upon appeal did not establish the "cause prong" required by *Wainwright v. Sykes* and that a claim of ineffective assistance of counsel, which would satisfy the "cause prong," should generally be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Murray v. Carrier*, 477 U.S. at 489, 106 S.Ct. at 2646. (5) There-

fore, Hurd's petition should be dismissed without prejudice so that Hurd could either establish, or exhaust, a claim of ineffective assistance of counsel in the state courts. We are not in accord with this reasoning.

Any "change in the law," as suggested by counsel, occurred over three months *prior* to the report of the magistrate. The request to withdraw the petition without prejudice came *after* the magistrate's report. So far as we are advised, there was no "change in the law" subsequent to the date of the magistrate's report and the date of the district court's judgment. In such circumstance, counsel agree that Hurd's motion to withdraw his petition without prejudice was addressed to the sound discretion of the trial judge and that Hurd had no "right" to withdraw his petition. We find no abuse of discretion. Although the request to withdraw the petition came before there was final disposition of the petition by the district court, it came after the magistrate had filed his report. Hence, although the final resolution of the matter was not set in concrete at the time the motion to withdraw was filed, there was nonetheless some rather clear handwriting on the wall in the form of the magistrate's report. Under such circumstances, the district court did not abuse its discretion in denying the motion to withdraw petition.

*Powell v. Spalding*, 679 F.2d 163 (9th Cir.1982) bears considerable resemblance to the instant case. In *Powell*, the petitioner in his federal habeas corpus petition set forth four grounds for relief, each of which had been presented to a state court and rejected. After the state had filed its return and answer, petitioner sought to amend his petition by including a fifth ground for relief which had not been presented to the state court. A magistrate recommended that the district court consider only the issues raised in the original petition, observing that under Ninth Circuit case law, which predated *Rose v. Lundy*, *supra*, if an unexhausted claim is included along with exhausted claims, the petition must be dismissed. The magistrate proceeded to reject the four exhausted claims on the merits and recommended that the petition be denied. The district court adopted the magistrate's report and denied the petition. On appeal, the Ninth Circuit held that the district court, in adopting the magistrate's recommendation, did not abuse its discretion in refusing to allow the petitioner to amend his petition to include an unexhausted issue, noting that "[t]he State had already filed its return and answer and the magistrate had undoubtedly invested considerable time in treating the original petition. Moreover, an amendment would have required the magistrate to recommend that the petition be dismissed without reaching the merits." *Powell v. Spalding*, 679 F.2d at 166.

Unlike the petitioner in *Powell*, Hurd did not even request permission to amend his petition by including an unexhausted ground for relief, and his motion to withdraw his petition was only filed *after* the magistrate's report.

Judgment affirmed.