Terry **CLARK**, Petitioner–Appellant,

v.

Robert J. **TANSY**, Warden; **Attorney General for the State of New Mexico, Respondents–Appellees.**

No. 91–2278.

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1993.

**1408**

Peter Schoenburg, Albuquerque, NM, for petitioner-appellant.

William McEuen, Asst. Atty. Gen. for the State of N.M. (Tom Udall, Atty. Gen. of New Mexico, with him on the brief), Santa Fe, NM, for respondents-appellees.

Before McKAY, Chief Judge, WOOD, Jr.* and ANDERSON, Circuit Judges.

McKAY, Chief Judge.

Terry Clark, a New Mexico state prisoner, appeals both the denial of his motion to dismiss his petition for habeas corpus without prejudice and the district court's holdings on the merits.[1] Because our judgment on the issue of the district court's denial of Mr. Clark's motion to dismiss without prejudice is dispositive, we do not reach the other aspects of Mr. Clark's appeal.

Mr. Clark was convicted of kidnapping and of first degree criminal sexual penetration under N.M.Stat.Ann. §§ 30–9–11(A)(1) and 30–4–1(A)(3) (1984), respectively. Mr. Clark appealed these convictions in state court, arguing that the trial court improperly admitted hypnotically-induced evidence in violation of his constitutional rights and that the photo array that the New Mexico police used to identify him was impermissibly suggestive. The New Mexico Court of Appeals affirmed the conviction, and the New Mexico Supreme Court denied Mr. Clark's petition for a writ of certiorari. *State v. Clark,* 104 N.M. 434, 722 P.2d 685 (Ct.App.), *cert. denied,* 104 N.M. 378, 721 P.2d 1309 (1986).

Mr. Clark subsequently filed a petition for a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988), raising the above constitutional objections. Mr. Clark filed his habeas petition *pro se,* there being no right to counsel in habeas proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). In its Response, the government argued that Mr. Clark had failed to exhaust his claims in state court, and that the habeas petition should therefore be dismissed. The district court, in an order dated April 27, 1988, rejected the government's argument, and ruled that Mr. Clark had exhausted his claims. The court then appointed the Federal Public Defender's Office to represent Mr. Clark in the habeas proceeding.

Soon after the appointment of the Federal Public Defender's Office to represent Mr. Clark, the government filed a motion to dismiss with prejudice the first ground upon which Mr. Clark's petition was based. The government served this motion upon "the Federal Public Defender's Office" as attorney for Mr. Clark. (R.Vol. I Doc. 9 at 2). Approximately one month later, on July 8, 1988, counsel for Mr. Clark filed his response to this motion to dismiss, marking counsel's first appearance of record.

Eighteen days later, before the district court had ruled on the government's motion to dismiss, before any briefs had been filed, and well before any hearings on the merits of Mr. Clark's habeas petition, Mr. Clark's counsel was able to identify other federal constitutional issues, including ineffective assistance of counsel, that he wished to pursue. Accordingly, Mr. Clark's counsel moved to dismiss the habeas petition without prejudice so that Mr. Clark could exhaust these claims in state court prior to proceeding on habeas corpus. Two weeks after Mr. Clark filed his motion to dismiss, the district court issued its order granting the government's motion to dismiss the first ground of the petition. In this order, despite the fact that Mr. Clark's motion to dismiss had been filed well in advance, the district court made no mention of that motion. Approximately three months

---

* Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The district court refused to issue a Certificate of Probable Cause for appeal in this matter. Having reviewed the record and files in this case,

we conclude that Appellant has made the substantial showing of the denial of a federal right necessary for the issuance of a certificate under 28 U.S.C. § 2253. Accordingly, we now issue a Certificate of Probable Cause.

later, after repeated prodding from Mr. Clark's counsel, and after granting numerous extensions of time for Mr. Clark to file his brief (these extensions being requested in order to avoid forcing the parties to expend the time necessary to prepare briefs which might be mooted by the granting of the motion to dismiss), the district court summarily disposed of Mr. Clark's motion to dismiss, denying the motion on the ground that both the government and the district court had already spent considerable time on the case.

The habeas proceeding then advanced to hearings on the merits of the claims raised in the petition, and the district court ultimately denied Mr. Clark's claim that the admission of the victim's identification of him prior to and at trial constituted a violation of his constitutional rights. This appeal followed.

■ The denial of a motion to dismiss a habeas petition without prejudice is reviewed for an abuse of discretion. *Hurd v. Mondragon*, 851 F.2d 324, 329 (10th Cir.1988). Certain aspects of habeas corpus law, however, mandate more than a superficial review of such a denial. Instead, we must carefully review the circumstances of the denial in order to ensure that the petitioner's ability to present claims of constitutional violations is not abridged merely because the petitioner has unwittingly fallen into a procedural trap created by the intricacies of habeas corpus law.

The habeas corpus statute explicitly requires the petitioner to exhaust his claims in state court prior to proceeding in federal court. 28 U.S.C. § 2254(b). In *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court addressed the issue of mixed habeas petitions containing both exhausted and unexhausted claims. The Court held that where a habeas petition contains both exhausted and unexhausted claims, the district court must dismiss the petition, giving the petitioner the choice of re-filing a petition containing solely the exhausted claims and risking loss of the chance to present the unexhausted claims later, or delaying his habeas petition altogether pending the exhaustion of all of his claims. *Id.* at 521, 102 S.Ct. at 1204; *see also Coleman v.*

*Thompson,* —— U.S. ——, —— – ——, 111 S.Ct. 2546, 2554–55, 115 L.Ed.2d 640 (1991). This approach was justified on the grounds that comity required that state courts have the opportunity to review all claims of constitutional error. *Rose,* 455 U.S. at 518–19, 102 S.Ct. at 1203–04. Justice O'Connor, addressing the concerns of Justice Blackmun that the total exhaustion rule would operate as a "trap for the uneducated and indigent *pro se* prisoner-applicant," *id.* at 522, 102 S.Ct. at 1205 (Blackmun, J., concurring), noted that the rule would operate to give the habeas petitioner a choice. The petitioner could choose to wait until he had exhausted all of his claims in state court before proceeding on habeas, or he could choose to proceed immediately on the exhausted claims. In the latter case, the petitioner would know in advance that such a deliberate setting aside of unexhausted claims would invoke the risk of dismissal of subsequent petitions on grounds of abuse of the writ. *See id.* at 520–21, 102 S.Ct. at 1204–05.

Justice O'Connor's response to Justice Blackmun had as one of its bases the desire to frame clearly the choice for the habeas petitioner, and was firmly grounded in the "deliberate bypass" standard for abuse of the writ, which the Court had established in *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963). The petitioner's "entitle[ment] to resubmit a petition with only exhausted claims or to exhaust the remainder of [his] claims," *Rose,* 455 U.S. at 520, 102 S.Ct. at 1204, thus operated in tandem with the "deliberate bypass" test to ensure that the habeas process flowed smoothly without creating an artificial need for piecemeal adjudication of claims, and without unfairly depriving habeas petitioners of their ability to present claims of constitutional violations. Justice O'Connor reiterated that habeas petitioners would not suffer unfair prejudice from the total exhaustion requirement, noting that it

provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court. Just as *pro se* petitioners have managed to use the federal habeas machinery, so too

should they be able to master this straightforward exhaustion requirement. Those prisoners who misunderstand this requirement and submit mixed petitions nevertheless are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims.

*Id.* at 520, 102 S.Ct. at 1204.

However, as this case demonstrates, subsequent changes in habeas law have undermined Justice O'Connor's assurances. The "deliberate bypass" test that provided some of the theoretical justification for the rule adopted in *Rose* was abandoned in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In *McCleskey,* the Supreme Court extended the "cause and prejudice" test used in cases of procedural default to cases of repetitive habeas petitions. *McCleskey* establishes that successive petitions for habeas relief are presumptively deemed abusive once the government shows that the petitioner has previously filed one or more habeas petitions not raising the claims set forth in the current petition. *See id.* at 493, 111 S.Ct. at 1470. The petitioner must then demonstrate cause for his failure to present the claims in his initial petition, as well as prejudice from that failure. After *McCleskey,* it is essential that a habeas petitioner exhaust every possible claim in state court prior to proceeding for the first time on habeas.

At the time *Rose* was decided, a subsequent petition would not have been considered abusive in the absence of a showing that the petitioner had deliberately withheld a claim from his initial petition. Thus, a *pro se* petitioner did not risk inadvertently foreclosing his right to pursue certain constitutional claims by ignorantly filing a petition that excluded those claims. After *McCleskey,* however, this is precisely the "trap for the unwary *pro se* petitioner" of which Justice Blackmun warned. Since a prisoner has no right to counsel in habeas proceedings, *see Coleman,* — U.S. at —, 111 S.Ct. at 2566,

the initial habeas petition is typically filed *pro se,* or at best with the assistance of jailhouse lawyers who are notoriously unreliable. The absence of a right to counsel in habeas proceedings means that lack of counsel does not constitute cause under the *McCleskey* rule for a *pro se* petitioner's failure to raise a claim in his initial habeas petition. *See, e.g., Rodriguez v. Maynard,* 948 F.2d 684, 688 (10th Cir.1991) (holding petitioner's *pro se* status did not constitute adequate cause for failure to raise claims earlier). Thus, a petitioner's initial *pro se* habeas petition may inadvertently bar the petitioner from raising potentially valid constitutional claims that would have been quickly discovered had counsel been involved from the outset.

This case clearly demonstrates the effect of this trap. Mr. Clark alleges that he neglected to include certain unexhausted claims in his initial habeas petition. It is indisputable that, had Mr. Clark included even one of those unexhausted claims in his petition, the district court would have been compelled to dismiss the petition in accordance with *Rose.*[2] Thus, if Mr. Clark, proceeding *pro se,* had fortuitously included an unexhausted claim in his self-prepared petition, he would not have suffered the risk of forfeiting his right to present his unexhausted claims. Such a grave result should not be determined by chance.

In this case, counsel was appointed only after Mr. Clark had set the habeas process in motion. Almost immediately, Mr. Clark's counsel realized that there were unexhausted claims that would likely be barred if the habeas petition were to go forward. He thus acted responsibly by doing by motion what he would have done had he been present from the beginning, *i.e.* ensuring that all claims were exhausted prior to proceeding on habeas. Because counsel was forced to file a motion to dismiss without prejudice in order to accomplish this goal, Mr. Clark's right to

---

**2.** Indeed, as noted above, the state explicitly argued in its answer that the petition should be dismissed because Mr. Clark had not exhausted either of his claims. It is ironic that, had the state prevailed in its argument and had the district court not found that the first claim had been

exhausted by procedural bar and the second by fair presentation to the state court, Mr. Clark's petition would have been dismissed without prejudice under *Rose,* and this issue would not be before us today.

exhaust all of his claims prior to proceeding on habeas was left to the discretion of the trial court.

As noted above, the denial of such a motion is reviewed for an abuse of discretion. *Hurd v. Mondragon*, 851 F.2d 324, 329 (10th Cir.1988). This circuit has defined an abuse of discretion as an arbitrary, capricious, or whimsical judicial determination. *United States v. Wright*, 826 F.2d 938, 943 (10th Cir.1987). An abuse of discretion does not require reversal if the abuse amounted to harmless error; the party alleging abuse of discretion must prove prejudice. *Id.* We must be especially careful where, as here, we have an uneducated appellant, unrepresented by counsel, filing the initial habeas corpus motion. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir.1990). Since Mr. Clark will likely be foreclosed from pursuing the unexhausted claims in a later habeas proceeding, we must carefully review the district court's decision to deny the motion to dismiss without prejudice. We do not imply that the district court must never deny such a motion to dismiss, nor do we suggest that we are altering the abuse of discretion standard with which we review such decisions. Rather, we merely hold that the individual circumstances of the case must be considered in ruling on the trial court's denial of the motion. We now proceed to that consideration.

Mr. Clark moved to dismiss his habeas corpus petition soon after the court appointed counsel to represent him so that he could exhaust additional federal constitutional claims in state court. The district court denied the motion "[i]n view of the fact that Respondent and this Court already have invested considerable time in this matter." (R. Vol. I Doc. 18.)

■ Federal Rule of Civil Procedure 41(a)(2) governs voluntary dismissals after the opposing party has filed an answer or motion for summary judgment. Dismissal under Rule 41(a)(2) is within the sound discretion of the court. 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2364 at 161 (1971). In exercising that discretion, the purposes of Rule 41(a)(2) must

be taken into account. That rule is designed "primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Id.* at 165 (quoting *Alamance Indus., Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir.1961), *cert. denied*, 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961)). When considering a motion to dismiss without prejudice, "the important aspect is whether the opposing party will suffer prejudice in the light of the valid interests of the parties." *Barber v. General Electric Co.*, 648 F.2d 1272, 1275 (10th Cir. 1981); Wright and Miller, *supra*, at 165. "It is the prejudice to the [opposing party], rather than the convenience of the court, that is to be considered in passing on a motion for dismissal." Wright and Miller, *supra*, at 169. We therefore hold that, to the extent the district court's ruling was founded upon the amount of time the court had spent on the case, the ruling was an abuse of discretion.

■ Accordingly, we must confine our examination of the district court's ruling to the prejudice that the government would have suffered if the motion to dismiss had been granted. The factors the district court should consider in determining the "legal prejudice" the opposing party will suffer if a motion to dismiss without prejudice is granted include "the [opposing party's] effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the [movant] in prosecuting the action, [and] insufficient explanation for the need to take a dismissal." *Huskey v. National Liquid Blasting Corp.*, 1987 WL 276128, 1987 U.S.Dist. LEXIS 8996 at *1 (D.Kan.) (Aug. 7, 1987) (quoting *United States v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir. 1986)). We consider these factors in order, with a view toward determining whether the district court abused its discretion.

■ With regard to the first factor, the opposing party's effort and expense in preparing for trial, the record shows the following sequence of relevant events:

1) *February 1, 1988: Pro se* Petition for habeas corpus. (R. Vol. I Doc. 2.)

2) *March 24, 1988:* Respondent's Answer and motion for dismissal for lack of exhaustion. (R. Vol. I Doc. 6.)

3) *April 27, 1988:* Order denying Respondent's request for dismissal for lack of exhaustion and appointing the Federal Public Defender's Office to represent Appellant. (R. Vol. I Doc. 8.)

4) *May 27, 1988:* Respondent's Motion to Dismiss Ground 1 With Prejudice, with two page supporting memorandum. (R. Vol. I Doc. 9.)

5) *July 8, 1988:* Appellant's Motion to Reconsider Magistrate's Order of April 27, 1988 and Response to Respondent's Motion to Dismiss. Three and one half pages. (R. Vol. I Doc. 11.)

6) *July 26, 1988:* Appellant's Motion to Dismiss without prejudice. (R. Vol. I Doc. 12.)

7) *August 10, 1988:* Order granting Respondent's Motion to Dismiss Ground 1. (R. Vol. I Doc. 14.)

8) *November 3, 1988:* Order denying Appellant's Motion to Dismiss Without Prejudice and dismissing Appellant's claim with prejudice, "[i]n view of the fact that Respondent and this Court already have invested considerable time in this matter." (R. Vol. I Doc. 18.)

The state's Answer consisted of five boilerplate sentences, supported by a two and one-half page "Memorandum on Exhaustion," of which one page consisted of restating Mr. Clark's claims for relief. (R. Vol. I Doc. 6.) The state's Motion to Dismiss Ground One of the petition with prejudice consisted of three sentences of argument, supported by a one and one-half page Memorandum in support of the motion. (R. Vol. I Docs. 9–10.) By any reasonable measure, there was an extremely limited amount of work involved in this matter prior to Mr. Clark's motion to dismiss. *Cf. Barber,* 648 F.2d at 1275 ("In the face of extensive discovery it would be an abuse of discretion to grant a voluntary dismissal...."); *In re Fairchild,* 969 F.2d 866, 868 (10th Cir.1992) (no abuse of discretion in denying dismissal without prejudice in light of significant amount of time and resources expended by IRS in preparing for hearing, and fact that motion was made the day before the hearing and only after debtor had requested and been granted two continuances).

The second factor to be considered, excessive delay and lack of diligence on the part of the movant, also clearly indicates that the district court erred in refusing to grant the motion to dismiss. Mr. Clark filed his habeas petition *pro se.* His failure to have exhausted certain state claims cannot be construed as a lack of diligence on his part. *Cf. McCleskey,* 499 U.S. at 491, 111 S.Ct. at 1469 (expressing concern that habeas review might give litigants "incentives to withhold claims for manipulative purposes"). Nor can it be said that Mr. Clark lacked diligence in failing to ensure that he had complied with technical legal requirements prior to filing his *pro se* petition. The rights of *pro se* litigants must be carefully protected where highly technical legal requirements are involved, especially when strict enforcement of those requirements would result in a loss of the opportunity to prosecute a claim on the merits. *Jaxon v. Circle K Corp.,* 773 F.2d 1138, 1140 (10th Cir.1985) (quoting *Garaux v. Pulley,* 739 F.2d 437, 439 (9th Cir.1984)). It was only when counsel was appointed to represent Mr. Clark that the adequacy of his petition could be assessed satisfactorily.

Furthermore, there is no evidence of improper delay. Mr. Clark's counsel filed the Motion to Dismiss Without Prejudice within two months of the court's appointment of the Federal Public Defender's Office as counsel for Mr. Clark, prior to the State's delivery of the state court records, and prior to the court's ruling on the state's Motion to Dismiss Ground One. We take judicial notice of the significant workload of the Federal Public Defender's Office, as did the trial court, in granting repeated extensions of time for Mr. Clark's counsel to file his brief in chief. (*See* R. Vol. I Docs. 19–26, 28, 30, 33–36.) On the record before us, we conclude that there was no improper delay or lack of diligence on Mr. Clark's part.

The third factor, insufficient explanation of the need for a dismissal, raises only slight difficulty. In his Motion to Dismiss, Mr. Clark stated that he had "additional federal constitutional grounds, including ineffective

assistance of counsel, that he wishes to exhaust at the state court level prior to refiling the above captioned petition with the additional exhausted claims included." (R. Vol. I Doc. 12.) Mr. Clark did not spell out in detail exactly which claims he wished to exhaust other than ineffective assistance of counsel. While a request to exhaust unarticulated claims would call for a different conclusion concerning abuse of discretion, the articulated request to exhaust a claim of ineffective assistance of counsel requires reversal. This court has expressed the view that in cases of appeals from federal convictions under 28 U.S.C. § 2255, the preferred procedure for reviewing ineffective assistance of counsel claims is to bring them by way of habeas corpus or other supplemental proceedings in the trial court rather than as a part of the direct appeal. *E.g., Beaulieu v. United States,* 930 F.2d 805, 807 (10th Cir. 1991). That sound policy recognizes that typically this issue will require the development of an independent record in order to prepare it for full review by this court. Similarly, the petitioner in a habeas case must be permitted to develop the record fully on the issue of ineffective assistance of counsel in collateral proceedings in the state courts in order to ensure an adequate record for this court to review.

Consistent with our analysis of the factors to be considered in ruling upon a motion to dismiss without prejudice, we hold that the district court's refusal to grant the motion constituted an abuse of discretion. In light of the Supreme Court's holding in *McCleskey,* mandating that a prisoner's second habeas petition raising claims not raised in the first petition be dismissed absent cause and prejudice, we conclude that there is a significant probability that Mr. Clark will be prejudiced by his failure to exhaust all claims before proceeding on habeas corpus. We therefore conclude that the abuse of discretion in this case requires reversal of the district court's refusal to dismiss without prejudice.

The judgment of the district court is VACATED, and the cause is REMANDED with instructions to dismiss Mr. Clark's petition for habeas corpus without prejudice.