**PHILLIPS USA, INC., Plaintiff–Appellant,**

v.

**ALLFLEX USA, INC., et al., and N.J. Phillips Pty., Limited, Defendants–Appellees.**

No. 94–3288.

United States Court of Appeals, Tenth Circuit.

Feb. 26, 1996.

Paul Hasty, Jr. (Richmond M. Enochs and Karl Kuckelman, also of Wallace, Saunders, Austin, Brown and Enochs, with him on the briefs), Overland Park, Kansas, for Plaintiff–Appellant.

Paul W. Rebein (William R. Sampson, also of Shook, Hardy & Bacon, with him on the brief), Overland Park, Kansas, for Defendant–Appellee N.J. Phillips Pty., Ltd.

Before EBEL and LOGAN, Circuit Judges, and HOLMES, District Judge.[*]

LOGAN, Circuit Judge.

Plaintiff Phillips USA, Inc. (Phillips USA) appeals the district court's grant of summary judgment in favor of defendant N.J. Phillips Pty., Ltd. (NJP).

On appeal Phillips USA asserts that (1) the district court abused its discretion in denying Phillips USA's motion to dismiss its claims against NJP without prejudice pursuant to Fed.R.Civ.P. 41; (2) the district court erred in granting NJP's motion for summary judgment based on federal res judicata (claim preclusion) law rather than Kansas law; and (3) even if the district court should have applied federal res judicata law those requirements were not met.

I

NJP is an Australian company that manufactures veterinary equipment. For more than thirty years NJP distributed its products through another Australian company, William Felton & Company, Pty., Ltd. (Felton & Co.), which then exported the products to the United States. The two companies had no written agreements until January 1, 1989, when they executed a distributorship agreement (NJP–Felton contract) providing

Felton & Co. the exclusive right to distribute NJP products in the United States and Canada.

Felton & Co. created an American subsidiary, Phillips USA—incorporated in New York with its principal place of business in Kansas—to sell the NJP products in the United States. Phillips USA entered a separate agreement (Phillips USA–Allflex contract) with an American company, Allflex USA, Inc. (Allflex), to act as its sales representative in the United States. The Phillips USA–Allflex contract provided that Phillips USA would pay Allflex a commission for sales of NJP products.

After NJP raised its prices twice in twelve months, Phillips USA decided to terminate its contract with Allflex. Allflex waived the sixty-day notice of termination requirement under the contract and the contract was terminated as of May 1, 1991.

Phillips USA asserts that immediately after terminating the contract Allflex began to negotiate with NJP for distribution rights including those to which Felton & Co. had exclusive rights under the NJP–Felton contract. Ultimately, NJP contracted with Allflex New Zealand, Allflex USA's corporate parent, for the distribution of NJP products to the United States, Canada and other markets (NJP–Allflex contract). The NJP–Allflex contract provided that NJP would sell its products to Allflex New Zealand which would then ship NJP products to Allflex USA to be distributed in the United States and Canada.

In December 1991, Phillips USA and Felton & Co. filed suit against NJP in federal court in Australia, claiming that NJP breached its contract with Felton & Co. and engaged in deceptive and misleading trade practices. The court tried the liability and damages issues separately. In May 1992, the Australian court found that NJP breached the NJP–Felton contract by selling its goods to Allflex New Zealand for further shipment and sale in the United States and Canada. NJP unsuccessfully appealed the judgment.

[*] The Honorable Sven Erik Holmes, United States District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

In June 1992, about a month after the Australian judgment against NJP, Phillips USA filed the instant lawsuit against Allflex in state court in New York.[1] Allflex removed the case to federal court which transferred it to the United States District Court for the District of Kansas. Phillips USA later amended its complaint, adding NJP as a defendant, asserting tortious interference with contract and that NJP had conspired with Allflex to displace and eliminate Phillips USA from the United States marketplace.

NJP filed a motion to dismiss on the ground the claims against it were barred by res judicata; it asserted plaintiff had the opportunity to bring the claims in the Australian action. Because NJP's motion to dismiss relied on matters outside the pleadings, the district court treated it as a motion for summary judgment.

The district court provided Phillips USA a limited amount of time to conduct discovery on the res judicata issue and ordered its response to the motion for summary judgment by November 15, 1993. Phillips USA moved to dismiss its claims against NJP and other defendants without prejudice. NJP objected and argued that the district court should rule on its motion for summary judgment. The district court denied Phillips USA's motion to dismiss without prejudice and granted NJP's motion for summary judgment. The district court later granted plaintiff's motion for reconsideration, amended its ruling and granted Phillips USA additional time to conduct discovery concerning res judicata and to respond to NJP's motion. After Phillips USA filed its response to NJP's motion for summary judgment, the district court denied Phillips USA's motion for voluntary dismissal and granted NJP's motion for summary judgment.[2]

---

1. Allflex was a defendant in the suit but is not a party to this appeal.

2. The district court granted Phillips USA's motion to dismiss without prejudice as to the other defendants. Phillips USA refiled its . claims against those defendants and that action (No. 94–2012–JWL) was later dismissed with prejudice by the district court for abuse of the discovery process. NJP was also sued again in that action.

## II

Phillips USA first asserts the district court abused its discretion in denying its motion to dismiss without prejudice its claims against NJP.

■ We review the district court's decision to deny a voluntary dismissal under Fed.R.Civ.P. 41(a)(2) for an abuse of discretion. *See American Nat'l Bank & Trust Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir.1991). A court abuses its discretion if it renders a decision that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Robinson*, 39 F.3d 1115, 1116 (10th Cir.1994) (quotations omitted). The rule is designed "primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions," 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2364 at 279 (2d ed. 1994) (quoting *Alamance Indus., Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir.), *cert. denied*, 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961)). Thus, "[w]hen considering a motion to dismiss without prejudice, 'the important aspect is whether the opposing party will suffer prejudice in the light of the valid interests of the parties.'" *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir.1993) (quoting *Barber v. General Elec. Co.*, 648 F.2d 1272, 1275 (10th Cir. 1981)).

Rule 41(a)(2) controls voluntary dismissals after an opposing party answers or files a motion for summary judgment:

> Except as provided in paragraph (1) of this subdivision of this rule [dismissal before service or answer or dismissal by stipulation], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the

The district court granted NJP's motion to dismiss it from that action on the grounds that plaintiff was barred by the judgment in the instant case from bringing that subsequent suit. Phillips USA and Felton & Co. have appealed the district court's decision in dismissing the 1994 action. That is appeal No. 95–3004, which we address in another decision issued this date.

order, a dismissal under this paragraph is without prejudice.

Fed.R.Civ.P. 41(a)(2).

■ In *Tansy*, we adopted the following as relevant factors the district court should consider in ascertaining the "legal prejudice" the opposing party might suffer if the district court grants a motion to dismiss without prejudice: "the opposing party's effort and expense in preparing for trial," *Tansy*, 13 F.3d at 1411; "excessive delay and lack of diligence on the part of the movant," *id.* at 1412; and "insufficient explanation of the need for a dismissal," *id.; see United States v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir.) (setting out factors), *cert. denied,* 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986). A district court may also consider the present stage of litigation. *See* 789 F.2d at 502 (considering "the fact that a motion for summary judgment has been filed by the defendant"); *see also Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir.) (considering the expenses that will be duplicated by a second trial), *cert. denied,* 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990). These factors need not all be resolved in favor of the moving party for dismissal to be appropriate; likewise, they need not all be resolved in favor of the party opposing the motion to dismiss. *See Outboard Marine Corp.*, 789 F.2d at 502. Further, they are not exclusive; rather, they are guides for the district court.

■ The district court here identified each of the listed factors and focused specifically on "the fact that a motion for summary judgment of the claims against NJP has been pending for four months." I App. 221. Thus, it relied heavily not only on the fact that defendant has filed a motion for summary judgment, *see Outboard Marine Corp.*, 789 F.2d at 502, but also on Phillips USA's lack of "diligence." The court noted that it had granted Phillips USA additional time to respond to NJP's proffered material facts, and also an extension of time for discovery on the res judicata issue. The court recited that Phillips USA did not show that it had conducted further discovery on the res judicata issue and did not request further time for discovery. Rather, a few days before its response to the summary judgment motion was due, Phillips USA filed its motion to dismiss without prejudice.

The court also noted that Phillips USA offered "little explanation" for its decision to dismiss, citing only "numerous business, financial and personal issues facing [Phillips USA's] Chief Executive Officer." I App. 182 (quoting Plaintiff's Memorandum in Support of Motion to Dismiss). The court further noted that "[t]his litigation [had been] pending for over a year," *id.* at 222, and that although the district court had expressed concern that NJP might not be a proper party, Phillips USA had failed to demonstrate that it was. *Id.* at 223.

The district court did not expressly analyze the factor of "defendant's effort and expense of preparation for trial." *See Tansy*, 13 F.3d at 1411. Phillips USA points out that the record does not reflect that NJP conducted considerable discovery or incurred substantial expense in preparing for trial. *Cf. Barber*, 648 F.2d at 1275 (abuse of discretion to grant voluntary dismissal "[i]n face of extensive discovery"). But the absence of this factor is not dispositive; it appears the district court considered it lacking but found the other factors supported denial of Phillips USA's motion.

■ We agree with the district court that a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice. *See Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969) (upholding dismissal with prejudice when it was apparent the defendant was entitled to summary judgment). After reviewing the record, we hold that the district court did not abuse its discretion in denying Phillips USA's motion to dismiss without prejudice.

### III

Phillips USA next contends that the district court erred in concluding that res judicata (claim preclusion) barred its cause of action. Phillips asserts that the district court should have applied Kansas law, which it asserts would not bar its action, rather

than federal law.[3] Alternatively, it asserts that even if federal law controls, res judicata would not preclude this suit.

■ This court has not addressed whether to apply state or federal law when a party in a federal diversity case invokes the defense that a foreign country's prior judgment is res judicata to a claim.[4] Plaintiff argues that under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the recognition of foreign nation judgments is governed by state law; thus, a federal court sitting in diversity would apply the law of the state in which it sits. *See Restatement (Second) of Conflicts of Laws* § 98 cmt. c (rev. 1988); *see also Success Motivation Inst. of Japan Ltd. v. Success Motivation Inst. Inc.*, 966 F.2d 1007, 1010 (5th Cir.1992); *Andes v. Versant Corp.*, 878 F.2d 147, 148 (4th Cir. 1989). We believe that the view accepted by the revised *Restatement* is correct: "[U]nless and until some federal statute or treaty declares otherwise, it is state, not federal, law that governs the effect to be given foreign judgments." Robert Casad, *Issue Preclusion and Foreign Country Judgments: Whose Law?*, 70 Iowa L.Rev. 53, 78 (1984); *see also Aetna Life Ins. Co. v. Tremblay*, 223 U.S. 185, 32 S.Ct. 309, 56 L.Ed. 398 (1912) (refusing to review Maine decision denying recognition to Canadian judgment because case did not involve federal question).[5]

■ We must next determine whether Kansas would recognize an Australian judgment, and if so, whether it would preclude Phillips USA's instant claim. No Kansas court has addressed whether Kansas recognizes Australian judgments. Further, Kansas has not passed the Uniform Foreign Money Judgments Recognition Act. *Cf.* Mass.Gen.L. ch. 235, § 23A (1966). Kansas does, however, apply traditional principles of comity. *See In re Marriage of Nasica*, 12 Kan.App.2d 794, 758 P.2d 240 (1988).

Nothing in Kansas statute or case law suggests that it would not follow the principles set out in *Hilton v. Guyot*, 159 U.S. 113, 202, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895). In *Hilton*, the Supreme Court stated that federal courts will recognize a foreign judgment if

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment.

*Id.*[6] Other courts have recognized Australian judgments, *see, e.g., John Sanderson &*

---

**3.** Phillips USA asks that if we find Kansas law unclear on this point, we certify the question to the Kansas Supreme Court. We deny its motion to certify.

**4.** In a related context we have noted that "[t]here is some confusion in this circuit as to whether federal or state rules should apply" to the "issues of res judicata and collateral estoppel in relation to successive diversity jurisdiction cases in federal court." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir.1995) (citing *American Motorists Ins. Co. v. General Host Corp.*, 946 F.2d 1482 (10th Cir.), *vacated in part*, 946 F.2d 1489 (10th Cir.1991)). The *Frandsen* opinion suggested "that at some point the Tenth Circuit would 'affirm the language of *Petromanagement [Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329 (10th Cir.1988)]' and the *Restatement* and apply federal preclusion law except where the matter is distinctly substantive." *Id.* But the *Frandsen* court found, as had *American Motorists*, that such a determination was not necessary because the collateral estoppel laws of Utah are "substan-

tially the same as under federal law." *Id.* at 978 (citations omitted).

**5.** Commentators have noted that leaving to state law the determination of the recognition and enforcement of foreign country judgments may be a problem; thus the *Restatement* notes, "it seems probable that federal law would be applied to prevent application of a State rule on the recognition of foreign nation judgments if such an application would result in the disruption or embarrassment of the foreign relations of the United States." *Restatement* § 98 at cmt. c (citing *Zschernig v. Miller*, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968)). No such problem is apparent in the instant case.

**6.** Although *Hilton* also required that a foreign judgment not be recognized in the federal courts in this country if the foreign country would not recognize a prior judgment in the United States, courts have concluded that reciprocity is no longer an element of the federal law of enforcement of foreign judgments. *See, e.g., Tahan v.*

*Co. (Wool) Pty. Ltd. v. Ludlow Jute Co. Ltd.,* 569 F.2d 696 (1st Cir.1978); *South Carolina Nat'l Bank v. Westpac Banking Corp.,* 678 F.Supp. 596 (D.S.C.1987), and we believe Kansas courts would recognize a valid Australian judgment.

We must next consider whether this recognition would extend to finding that the Australian action forbids the instant suit under principles of claim preclusion or res judicata. Kansas generally applies the res judicata rules of the foreign forum in determining what effect to give that judgment. *See Johnson Bros. Wholesale Liquor Co. v. Clemmons,* 233 Kan. 405, 661 P.2d 1242, 1245 (Kansas looks to law of foreign judgment state to determine whether foreign judgment was valid), *cert. denied,* 464 U.S. 936, 104 S.Ct. 345, 78 L.Ed.2d 311 (1983); *see also Restatement (Second) of Conflicts of Law* § 98 cmt. f (rev. 1988) (scope of a foreign country's judgment is a matter of the foreign country's law). The record reflects no definite showing as to Australian res judicata law; therefore, we assume that Australian res judicata principles are similar to those of Kansas. *See, e.g., McCord v. Jet Spray Int'l Corp.,* 874 F.Supp. 436, 440 (D.Mass.1994); *Panama Processes, S.A. v. Cities Service Co.,* 796 P.2d 276, 291–92 & n. 70 (Okla.1990) (applying domestic principles of res judicata when foreign law was unavailable).

According to the Kansas Supreme Court,

'The law does not favor a multiplicity of suits, and, where all the matters in controversy between parties may be fairly included in one action, the law requires that it should be done.' The doctrine of res judicata prohibits one who has a cause of action from dividing or splitting that cause so as to make it the subject of several actions, without the consent of the person against whom the cause exists.

*Ellis v. State Farm Mut. Auto. Ins. Co.,* 249 Kan. 599, 822 P.2d 35, 38 (1991) (quoting *Thisler v. Miller,* 53 Kan. 515, 36 P. 1060, 1062 (1894)).

Under Kansas law res judicata has four elements: identity of things sued for; identity of cause of action; identity of persons and parties to the actions; and identity in quality of persons. *Wells v. Ross,* 204 Kan. 676, 465 P.2d 966, 968 (1970). In the instant case, the parties do not dispute the identity of things sued for and of parties. Phillips USA argues, however, that there is not an identity of cause of action because the Australian case was for breach of the NJP–Felton contract, and the instant claim is for tortious interference in the Phillips USA–Allflex contract.

The district court determined that

[t]he fact that two contracts are involved in the course of events at issue is not determinative in this case. In both the Australian action and this action, plaintiff seeks damages related to the demise of NJP's business relationship with PUSA [Phillips USA] and the subsequent development of a distributorship agreement between NJP and Allflex NZ. Central to both actions is NJP's entry into a distributorship with Allflex NZ. Plaintiff has proffered no evidence by which this court may conclude that NJP's claim, which is that the acts allegedly responsible for NJP's interference with PUSA's business relationship with Allflex USA (as stated in the complaint in this case) are, in fact, the same set of acts that constituted the "breach" of the contract · between NJP and William Felton & Co. Pty. Ltd. in the Australian action, is anything but accurate.

I App. 226.

Of course, the district court was applying the law of the Tenth Circuit, which has adopted the transactional approach to the identity of claims/cause of action question. *See Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1236–38 (10th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). Although there are numerous Kansas cases discussing res judicata, none expressly adopt or reject the transactional approach. There are statements, however, in several cases

*Hodgson,* 662 F.2d 862, 867–68 & n. 21 (D.C.Cir. 1981). In any event, in this case reciprocity is not an issue because defendants have provided evidence that Australian courts are reciprocal

with United States courts. Thus, whether or not Kansas would require reciprocity does not determine the outcome in this case.

indicating that Kansas approves of the transactional approach. *See, e.g., Carson v. Davidson*, 248 Kan. 543, 808 P.2d 1377, 1382 (1991) (res judicata " 'requires that all the grounds or theories upon which a cause of action or a claim is founded be asserted in one action or they will be barred in any subsequent action' ") (quoting *Parsons Mobile Prods., Inc. v. Remmert*, 216 Kan. 138, 531 P.2d 435, 437 (1975)); *Griffith v. Stout Remodeling, Inc.*, 219 Kan. 408, 548 P.2d 1238, 1240, syl. 3 (1976) ("[w]here two actions are bottomed on the same set of facts, a final adjudication upon the merits in the earlier action is generally res judicata in the later one").

In a somewhat related argument, Phillips USA contends that the instant case should not be barred because it did not litigate in Australia whether NJP's actions were tortious. Phillips USA asserts that it did not know the factual basis for the tortious interference claim when it brought the Australian action, and that even if it had learned those facts sometime during that action it could not have amended that complaint. Phillips USA relies in part upon an affidavit by its counsel stating that at the time of the amended statement of claim in Australia he had seen no proof of the tortious interference or conspiracy claims. Our review of the record indicates, however, that the facts underlying the tortious interference claim are in most aspects the same as those in the Australian statement of claims. The instant complaint relies upon essentially the same facts pleaded in Australia.

Both the amended complaint in the instant case and the further amended statement of claim in the Australian action relied upon the following alleged facts: there was a contract between NJP and Felton Australia for Felton & Co. to be the exclusive distributor for NJP products; Phillips USA was to be the Felton Australia distributor; Phillips USA subcontracted with Allflex USA to distribute its products; NJP raised its prices and as a result Phillips USA had to terminate its contract with Allflex and that further NJP then contracted with Allflex to be its distributor in the United States; and Phillips USA suffered damages as a result of NJP's agreement with Allflex to be its distributor. *See* I App. 66–75. These similarities between the instant complaint and the amended statement of claim in the Australian case render the attorney's affidavit superfluous. Further, documents show that Phillips USA's attorneys were aware of the potential tort claim. *See* II App. 542–52, 559–61, 565–70, 573–75.

Phillips USA also argues that even if the Australian court had jurisdiction over a tortious interference claim, it likely would have declined such jurisdiction. We need not address whether an Australian court would have declined to exercise jurisdiction of a tortious interference claim because Phillips USA did not attempt to bring that claim. It is waived; under Kansas claim preclusion law if an issue could have been raised, but was not, it is barred.

We therefore uphold the district court's finding that the Australian judgment bars the instant suit against NJP.

AFFIRMED.