OPINION OF THE COURT
William J. Giacomo, J.
*955 Although the time has long passed since the days when the phrase, “no writ-no right,” exemplified the difficulties faced by those seeking relief from our courts when highly technical procedural rules created a virtual minefield that a litigant was required to traverse in order to obtain his remedy (see Matter of Fiorini v Parkhurst, 198 Misc 796, 797 [Sup Ct, Broome County 1950] [recognizing that “(i)n 1937 the Legislature abolished the classifications, and writs and orders of certiorari to review, mandamus, and prohibition” (internal quotation marks and citation omitted)]), the practice of law remains a difficult endeavor for the members of the profession. In this case, the plaintiffs’ failure to timely assert certain of their claims in a federal court action and to determine the citizenship of all defendants for the purposes of diversity jurisdiction, coupled with the impact of their voluntary dismissal of that action without an agreement specifically preserving their right to commence a subsequent state court action, has cost them the opportunity to seek redress for all but one of their claims and against only three of the entities who they contend are responsible for the death of their father as a result of his exposure to ink and newsprint products manufactured by those entities.
I. Factual Background
Frank T. Casella (decedent) was employed by the New York Times from 1976 to 2001 as a mailer and foreman. On July 13, 2003, he died from acute myelogenous leukemia (AML). His wife, Kathleen Casella, died on July 11, 2004. Thereafter, their children, Kathleen Casella Barlow and Thomas Casella (Mr. Casella), were appointed administratrix and administrator, respectively, of the estates of decedent and Mrs. Casella.[1]
On July 12, 2005, acting in their individual capacities and as administratrix .and administrator, respectively, of the estates of their parents, Ms. Barlow and Mr. Casella commenced an action in Federal District Court for the Southern District of New York against each of the entities which are defendants at bar (the federal action) by filing their complaint alleging negligence, warranty and strict products liability claims (the federal complaint). At the initial conference in the federal action, Federal District Court Judge Colleen McMahon was informed that International Paper (IP), one of the defendants named in *956 that action (collectively hereinafter the federal action defendants), was a New York corporation, and that, as a consequence, complete diversity of citizenship was lacking. At that time, plaintiffs’ counsel asked for time to investigate IP’s challenge to diversity jurisdiction. Judge McMahon directed that the diversity issue be resolved by October 7, 2005. Thereafter followed an effort by plaintiffs to obtain consent from all of the federal action defendants to a voluntary discontinuance of that lawsuit without prejudice.
Having failed in that effort, on January 3, 2006, plaintiffs filed a notice of voluntary dismissal of the federal action (the federal dismissal notice) as to the five federal action defendants which had not filed answers to the federal complaint (collectively hereinafter the nonanswering federal defendants).[2] As a result, the federal action was voluntarily dismissed as against 11^ Sun Chemical Company and its subsidiary US Ink (together hereinafter Sun), Flint Ink and Flint Ink, N.A., Boise Cascade, LLC and Abitibi-Consolidated Inc.
Also on January 3, 2006, plaintiffs filed a motion to voluntarily dismiss the federal complaint as to the three federal action defendants which had answered to the federal complaint (collectively hereinafter the answering federal defendants). On January 25, 2006 that motion, which was unopposed, was granted by order of Judge McMahon (the federal dismissal order), and the federal action was dismissed as against Kimberly-Clark Corporation, Brant-Allen Industries and its two wholly owned subsidiaries, Bear Island Paper and F.F. Soucy and its subsidiary, F.F. Soucy, Inc. (collectively hereinafter Brant), and Bowater Incorporated.[3]
Then, on March 7, 2006, plaintiffs, both individually and in their capacities as administratrix and administrator,[4] respectively, of the estates of their parents, commenced the instant lawsuit against each of the federal action defendants. In their complaint (the state complaint), plaintiffs seek to recover damages for decedent’s personal injuries and pain and suffering (the *957 personal injury claim), loss of decedent’s services on behalf of Mrs. Casella (the spousal claim) and wrongful death of decedent on behalf of his distributees (the wrongful death claim), based upon the same negligence, warranty and strict products liability theories that were asserted in the federal action. Significantly, the spousal claim seeks damages for lost services “from on or about 2001 through the time of [Mrs. Casella’s] death on July 11, 2004” (D’Avanzo affirmation, exhibit A, state complaint, 1i 41). All of plaintiffs’ claims are based upon their central allegations that defendants are the manufacturers of ink and newsprint products which “contained benzene and other volatile organic products” and that decedent “was exposed on a daily basis to the products of all Defendants by touch and through inhalation” (id. 1111 28, 29).
Following service of process upon them in this action, each of the federal action defendants, who are named as defendants at bar (collectively hereinafter defendants) moves for either preanswer dismissal of the complaint or for summary judgment dismissing the complaint.
Although defendants’ motions request relief based upon several grounds, each of them is an attack upon the timeliness of plaintiffs’ assertion of their claims in this action. Whether the state complaint can survive defendants’ challenges turns upon the application of CPLR 205 (a), and its interplay with certain other CPLR and federal provisions. Thus, the court turns first to the purpose of section 205 (a) and the circumstances under which a plaintiff may receive its benefits.
II. Section 205 (a)
Section 205 (a) provides that:
“If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.” (Emphasis added.)
*958 As has been recognized, “The restorative provisions of CPLR 205 (a) . . . reflect! ] the idea that a diligent litigant who commenced a timely action but who failed on some generally technical ground, deserves an adjudication on the merits” (Matter of Winston v Freshwater Wetlands Appeals Bd., 224 AD2d 160, 164 [2d Dept 1996]).
A reading of section 205 (a) makes plain that there are six requirements that must be satisfied by a plaintiff seeking resort to its restorative effects (collectively hereinafter the section 205 [a] elements). These are: (1) that the prior action was timely commenced; (2) that the prior action was terminated other than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action or a final judgment upon the merits; (3) that a new action was commenced within six months from the termination of the prior action; (4) that the new action and the prior action are based upon the same transaction or occurrence or series of transactions or occurrences; (5) that the new action would have been timely commenced at the time of commencement of the prior action; and (6) that service upon the defendant in the new action is effected within six months from the termination of the prior action.
In this case, the parties are in full agreement as to only two of those requirements, i.e., that the federal action and this action are based upon the same factual allegations and legal claims and that this new action was commenced within six months from the termination of the prior action. Thus, the court must analyze the facts involved at bar to determine whether plaintiffs have satisfied the other four elements of the section 205 (a) showing. As will be apparent, that analysis leads along separate paths for the nonanswering and the answering federal defendants, albeit to a significant extent, it leads to the same terminus.
III. Manner of Termination
The first of the section 205 (a) elements to be addressed is the manner in which the federal action was terminated. Here, the termination procedure differed for the nonanswering and answering federal defendants.
Generally, section 205 (a) “is not applicable” to a case where “the plaintiff’s similar and timely-commenced federal action was terminated by voluntary discontinuance” (Naval v Lehman *959 Coll., 303 AD2d 662, 662 [2d Dept 2003]). Because not all discontinuances of federal actions are treated the same under section 205 (a), “it is necessary to ascertain not only whether a prior ‘action’ was timely commenced, but also whether the manner in which the prior action was ‘terminated’ rendered the plaintiff ineligible for the six-month extension under the terms of that statute” (Carrick v Central Gen. Hosp., 51 NY2d 242, 250-251 [1980]).
Rule 41 of the Federal Rules of Civil Procedure governs dismissals of actions. In particular, subdivision (a) (1) and (2) of that rule addresses the situations of dismissal without and with an order of the court.
A. Dismissal upon Court Order
To the extent relevant, rule 41 (a) (2) provides that:
“Except as provided in [rule 41(a) (1)], an action shall not he dismissed at the plaintiff’s instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.” (Emphasis added.)
A plaintiff relying upon this rule does not have an “absolute right” to that relief (Grivas v Parmelee Transp. Co., 207 F2d 334, 336 [7th Cir 1953], cert denied 347 US 913 [1954]), but rather, “Dismissal under Rule 41 (a)(2) is within the sound discretion of the court” (Clark v Tansy, 13 F3d 1407, 1411 [10th Cir 1993]).
Rule 41 (a) (2) has been analogized to CPLR 3217 (b), which authorizes a discontinuance upon court order of an action commenced in this state (Censor v Mead Reinsurance Corp., 176 AD2d 600, 601 [1st Dept 1991]).[5] Based upon the similarity of the two statutes, and because “CPLR 3217 (b)[ ] has been interpreted as affording plaintiffs an opportunity to take *960 advantage of . . . CPLR 205 (a), whereas a discontinuance without court order pursuant to CPLR 3217 (a) does not” (ibid.), a plaintiff is not denied the “remedial,” “ameliorative,” “toll-ling],” “extending]” and “sav[ing]” effects of section 205 (a) (Matter of Winston v Freshwater Wetlands Appeals Bd., supra, 224 AD2d at 164, n 2 [citations omitted]) where his prior federal lawsuit is terminated pursuant to a rule 41 (a) (2) dismissal order (Extebank v Finkelstein, 188 AD2d 513, 513 [2d Dept 1992] [rule 41 (a) (2) dismissal “was not equivalent to a voluntary discontinuance under CPLR 205 (a)”]; Censor v Mead Reinsurance Corp., supra [same]).
Here, the federal action was terminated as against the answering federal defendants by the federal dismissal order, i.e., pursuant to rule 41 (a) (2). Consequently, if plaintiffs have satisfied the other section 205 (a) elements, they may resort to that provision to continue their claims against Kimberly, Brant and Bowater (Extebank v Finkelstein, supra).
B. Dismissal by Notice
In contrast to rule 41 (a) (2), rule 41 (a) (1) establishes a procedure for termination of an action without a court order. Although entitled dismissal “By Plaintiff; By Stipulation,” in fact rule 41 (a) (1) permits a voluntary dismissal of a federal action in either of two ways, as follows: “(i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.” As further provided by rule 41 (a) (1):
“Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.”
It has previously been determined that “[a] plaintiff [i]s not entitled to the six-month extension afforded by CPLR 205 (a) following the dismissal of her similar and timely-commenced Federal action” when “that action was terminated by voluntary discontinuance pursuant to rule 41 (a) (1) (ii)” (Kourkoumelis v Arnel, 238 AD2d 313, 313 [2d Dept 1997]). Although the parties have not cited, and this court’s own research has not disclosed, *961 any authority addressing a voluntary dismissal pursuant to rule 41 (a) (1) (i), no basis exists for a disparate treatment of the two forms of termination of an action permitted by rule 41 (a) (1), since both are voluntary discontinuances, which are permissible as of right when the requisite notice or stipulation has been filed by the plaintiff (see Harvey Specialty & Supply, Inc. v Anson Flowline Equip. Inc., 434 F3d 320, 324 [5th Cir 2005]). Thus, absent other considerations, plaintiffs may not rely upon section 205 (a) to defeat the statute of limitations attack upon the state complaint asserted by the nonanswering federal defendants (see Carrick v Central Gen. Hosp., supra, 51 NY2d at 251 [section 205 (a) “by its terms is unavailable where the prior action was terminated ‘by a voluntary discontinuance’ ”]).
C. Plaintiffs’ Section 205 (a) Interpretation
In an effort to avoid the conclusion that section 205 (a) may not be invoked by them against the nonanswering federal defendants, plaintiffs offer three arguments. All three are lacking in merit.
1. “Without Prejudice” Language
First, plaintiffs note that rule 41 (a) (1) dismissals are without prejudice unless otherwise stated in the notice of dismissal or stipulation. Focusing upon the “without prejudice” language of that rule and the holding of the Court in Extebank v Finkelstein (supra), plaintiffs assert that: “It would seem contradictory to assume that the federal rule which allows a voluntary dismissed action to be without prejudice to have the effect of being dismissed with prejudice” (plaintiffs’ mem, Sept. 15, 2006, at 16). Plaintiffs then go further, in reliance upon Dyer v Cahan (150 AD2d 172 [1st Dept 1989]), and argue that: “Clearly the words without prejudice have significant meaning, and that CPLR § 205 (a) should be viewed ‘in light of the broad and liberal purpose for which CPLR 205 (a) was intended’ ” (plaintiffs’ mem, Sept. 15, 2006, at 16).
As an initial matter, plaintiffs’ reliance upon Dyer v Cahan to support their position is misplaced. In Dyer, Federal District Court Judge Brieant terminated plaintiffs prior wrongful death action by an order “which stated that ‘[t]he action is dismissed without prejudice for want of subject matter jurisdiction absent complete diversity, and also for neglect to prosecute and failure to comply with a scheduling order’ ” (supra, 150 AD2d at 173). *962 Armed with an order which terminated the prior action on a ground that is one of the exceptions from the application of section 205 (a), i.e., “dismissal for neglect to prosecute the action,” defendants therein attacked plaintiffs newly-commenced state court action as untimely. In the face of the challenge to plaintiffs resort to section 205 (a) to preserve his action, the reviewing court held that “[s]ince Judge Brieant’s dismissal was ‘without prejudice’, it is apparent that he did not intend to preclude plaintiff from the benefit of CPLR 205 (a) and, in light of the broad and liberal purpose for which CPLR 205 (a) was intended,” it rejected defendants’ statute of limitations attack (supra, 150 AD2d at 173 [internal citations omitted]).
Although plaintiffs portray that holding as a determination that CPLR 205 (a) is available to a plaintiff whenever the words “without prejudice” appear in an order dismissing his prior action or in a statute permitting voluntary discontinuance of an action, this court finds that their characterization of the Dyer court’s analysis is wrong. Ordinarily, Judge Brieant’s order in Dyer would have precluded plaintiff therein from relying upon section 205 (a) because one of the stated dismissal grounds was neglect to prosecute the federal court action. Thus, unless there was support for the conclusion that Judge Brieant intended his order to be without prejudice notwithstanding that basis for dismissal, plaintiff would have been unable to save his new action with the section 205 (a) time extension.
The Dyer court found that support in two forms. One was the Judge’s inclusion of “without prejudice” language in his order. The other, clearly more important, was its analysis of the impact of the other ground for dismissal by Judge Brieant, i.e., lack of subject matter jurisdiction. As made plain by the Court in Dyer, once Judge Brieant determined that he did not have subject matter jurisdiction, “ ‘[He] should [have] refrain[ed] from any further exercise of power’ ” because “ ‘[a] court without jurisdiction has no power to adjudicate but can only dismiss the proceeding for lack of jurisdiction’ ” {ibid, at 173 [citations omitted]). Implicit in that analysis is the conclusion that the statement that the prior action was dismissed for neglect of prosecution was a nullity, and had no effect on plaintiffs resort to section 205 (a). Obviously, once that dismissal ground was deemed to be removed from Judge Brieant’s order, his use of the “without prejudice” language supported the conclusion that he did not intend to preclude plaintiff from the section 205 (a) *963 benefits.[6] Thus, contrary to plaintiffs’ view, Dyer does not stand for the proposition that merely because a voluntary dismissal under rule 41 (a) (1) is generally without prejudice, that that factor, coupled with section 205 (a)’s liberal purpose, entitles a plaintiff to the six-month time extension whenever a federal court action is dismissed pursuant to rule 41 (a) (1).
Nor is there any inconsistency or, as plaintiffs characterize, “contradict[ion],” in treating a dismissal without prejudice under rule 41 (a) (1) as a termination which prevents a plaintiff from looking to section 205 (a) to save a subsequently-filed state court action. While the “without prejudice” language contained in rule 41 (a) (1) is certainly binding upon the federal courts with respect to a second federal action filed by a plaintiff whose first federal court action is voluntarily dismissed, it cannot be credibly argued that that wording is determinative of a plaintiff’s right to an extension of his time to commence a second action in a court of any state (see Semtek Int’l Inc. v Lockheed Martin Corp., 531 US 497, 505 [2001] [“The primary meaning of ‘dismissal without prejudice,’ we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim. That will also ordinarily (though not always) have the consequence of not barring the claim from other courts, but its primary meaning relates to the dismissing court itself ’ (additional emphasis added)]). Moreover, there is nothing contradictory in addressing a voluntary termination which is a matter of right, as is a rule 41 (a) (1) dismissal, different from a termination which is not automatic, and requires a court order, as is a rule 41 (a) (2) dismissal. Hence, contrary to plaintiffs’ contention, merely because the latter form of dismissal is not one which deprives a plaintiff of the benefits of section 205 (a), as Extebank held, does not compel the conclusion that all forms of voluntary terminations of actions must be similarly treated for the purposes of section 205 (a).
2. Stipulated Dismissals
Plaintiffs’ second argument is founded upon an analogy to rule 41 (a) (1) (ii) stipulated dismissals. Specifically, citing *964 authority such as Matter of Walter (29 AD3d 598, 599 [2d Dept 2006], lv dismissed 7 NY3d 844 [2006]), they contend that their voluntary dismissal pursuant to rule 41 (a) (1) (i) does not bar their reliance upon section 205 (a) because “[i]n the instant matter all parties were aware that the dismissal was not on the merits, but due to lack of diversity,” and that “it was dismissed without prejudice” (plaintiffs’ mem, Sept. 15, 2006, at 17).
It is certainly true that section 205 (a) “operates to save an action . . . that has been terminated by means of a voluntary discontinuance pursuant to a stipulation which contains an express statement of intent to preserve the right to commence a new action under [that provision]” (Montgomery v Minarcin, 245 AD2d 920, 921 [3d Dept 1997]). Thus, if there was any evidence that the nonanswering federal defendants agreed that the rule 41 (a) (1) (i) dismissal of the federal action was without prejudice to plaintiffs’ right to commence a new state court action, this court would agree with their position that they may seek the benefits of section 205 (a) (see Montgomery, see also Matter of Walter, supra).
Here, however, what is glaringly absent is the existence of any such agreement. Indeed, as is undisputed, although plaintiffs attempted to obtain a stipulation of discontinuance from all defendants, they refused to execute a stipulation expressing the parties’ understanding that the voluntary dismissal of the federal action was without prejudice to plaintiffs’ right to pursue a new action in state court. Therefore, this argument is unavailing.
3. Compliance with CPLR 3217
As their final effort to avoid the impact of their voluntary dismissal as against the nonanswering federal defendants, plaintiffs assert the following:
“In the alternative, if a Fed. R. Civ. E Rule 41 Voluntary Dismissal is to be construed as being identical to a CPLR § 205 (a) voluntary discontinuance, then the requirements of CPLR § 3217 Voluntary discontinuance were not met, specifically CPLR § 3217 (d) provides: ‘All notices, stipulations, or certificates pursuant to this rule shall be filed with the county clerk by the defendant’, as none of the moving Defendants filed any Notice or Stipulation with the county clerk, there was in effect no voluntary discontinuance.” (Plaintiffs’ mem, Sept. 15, 2006, at *965 18-19.)
This argument is without merit.
“In [m]atters governed by one of the Federal Rules of Civil Procedure th[e] [Federal] court will apply that rule regardless of contrary state law” (Johnson’s Estate v Bellville Hosp., 56 FRD 380, 384 [SD Tex 1972], citing Hanna v Plumer, 380 US 460, 473 [1965] [“Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules”]). Rule 41 (a) (1) (i) provides that a voluntary dismissal is accomplished “by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.”
In this case, plaintiffs concede that they filed the federal dismissal notice within the time frame established by rule 41 (a) (1) (i). By doing so, they satisfied all of the filing requirements that were necessary for that notice to be fully effective. Thus, the fact that a copy of the federal dismissal notice was not filed with the County Clerk of Westchester County is entirely without consequence for the purposes of these motions.
IV Timeliness of the Claims
Because the federal dismissal notice constitutes a voluntary discontinuance of the federal action, plaintiffs’ time in which to assert their claims against the nonanswering defendants was not extended by six months under section 205 (a).[7] Therefore, the timeliness of each of plaintiffs’ three causes of action as to the nonanswering defendants must be determined as of the March 7, 2006 commencement of this lawsuit.
By contrast, section 205 (a) relief is available to plaintiffs as to the answering federal defendants if they satisfy all of the section 205 (a) elements. Since one of those elements is that the federal action was timely commenced, a determination must be made whether each of the three causes of action was timely asserted in that action.
As discussed below, the analysis to be performed is, in some respects, the same as to the nonanswering and answering federal defendants. Nevertheless, there are certain differences *966 as between those two groupings of defendants, based upon whether they answered the federal complaint and whether they have moved for dismissal of the state complaint pursuant to CPLR 3211 or summary judgment dismissing the state complaint pursuant to CPLR 3212. The court turns first to the nonanswering federal defendants.
A. Timeliness of State Claims
As in the federal action, in this lawsuit plaintiffs have asserted the personal injury claim, the spousal claim and the wrongful death claim (collectively hereinafter the three causes of action). On each of their CPLR 3211 (a) (5) motions, the non-answering federal defendants contend that the three causes of action are time-barred when measured against the March 7, 2006 commencement date of this action.
1. Personal Injury Claim
A cause of action to recover for personal injuries must be asserted within three years of the accrual of the claim (CPLR 214 [5]). “As a general rule ‘a cause of action for personal injuries, whether sounding in negligence, malpractice, or products liability, accrues at the time of injury’ ” (Barrett v Glen Oaks Vil. Owners, Inc., 29 AD3d 612, 613 [2d Dept 2006] [citations omitted]). However, where, as at bar, the claim is that the decedent’s injuries were “caused by the latent effects of exposure to a[ ] substance or combination of substances,” the three-year limitations period “shall be computed from the date of discovery of the injury by the [decedent] or from the date when through the exercise of reasonable diligence such injury should have been discovered by the [decedent], whichever is earlier” (CPLR 214-c [2]). Relying upon CPLR 214-c (2), the nonanswering federal defendants maintain that the personal injury claim is time-barred.
“To dismiss a cause of action pursuant to CPLR 3211 (a) (5) on the ground that it is barred by the Statute of Limitations, a defendant bears the initial burden of establishing prima facie that the time in which to sue has expired” (Savarese v Shatz, 237 AD2d 219, 220 [2d Dept 2000]). If that showing is made, the burden shifts to the plaintiff to offer proof the action was timely commenced or that it falls within an exception to the statute of limitations (see ibid.).
As relates to the personal injury claim, the nonanswering federal defendants point to the allegations set forth in the state complaint to meet their burden. In this regard, they note that:
*967 “The Decedent’s spouse seeks damages for loss of services ‘from on or about 2001’ to the time of her death on July 11, 2004 . . . These allegations give rise to a reasonable inference that the date of injury for purposes of the personal injury claims asserted in this action occurred on no later than 2001.” (Sun mem at 7.)
Building upon that assertion, these defendants argue that, “[t]her[e]fore, this action — commenced some five (5) years after the date of injury/diagnoses — is, on its face, untimely” (ibid.).
Because this attack upon the personal injury claim relies upon the facts as set forth in the state complaint, it is particularly apt to note that the general rules on a CPLR 3211 (a) (5) motion are: (1) that the court must assume that the facts as stated in the complaint are true (Kronos, Inc. v AVX Corp., 81 NY2d 90, 92 [1993]); and (2) that “if [the complaint] does not indicate upon its face that the prosecution of the causes of action is barred by some statute of limitations, it must, at this point, be sustained” (Nasaba Corp. v Harfred Realty Corp., 287 NY 290, 296 [1942]). And in applying those rules, the court must “[d]raw[ ] the most favorable inference[s] from the complaint” (Goldstein v Schachne, 261 App Div 922, 922 [2d Dept 1941]).
Unfortunately, in this case, the state complaint offers scant information as to the accrual date of the personal injury claim. Indeed, the only dates set forth in the state complaint are the dates of death of decedent and Mrs. Casella, and the first date from which Mrs. Casella seeks damages on the spousal claim. Of course, a spouse’s cause of action for loss of consortium is dependent upon “the injured spouse’s right to maintain an action for injuries sustained” (Liff v Schildkrout, 49 NY2d 622, 632 [1980], rearg denied 49 NY2d 1048 [1980]). In view of that limitation upon a spouse’s right to sue, and even giving the state complaint the liberal reading to which it is entitled, the court agrees with the nonanswering defendants that the only inference that may be drawn from the allegations in the state complaint is that, for the purposes of CPLR 214-c (2), decedent discovered his injury in 2001. Because that date is more than three years prior to the March 7, 2006 commencement of this lawsuit, unless there is proof of a different discovery date, the personal injury claim is time-barred as to the nonanswering federal defendants.
Endeavoring to save the personal injury claim from that conclusion, plaintiffs complain that:
*968 “The moving Defendants would like this date to be sometime in 2001, the date in which Mr. Casella retired from work as a mailer and foreman at the New York Times Company . . . , as opposed to the date of his death of July 13, 2003 . . . Defendants would like the Court to believe that this earlier date was the date of discovery of the injury, or the date by which reasonable diligence the injury should of been discovered [sic], without providing any support for such a conclusion. Defendants take a remarkable leap by concluding by inference that Mr. Casella’s retirement is somehow the same date as his diagnosis with AML.” (Plaintiffs’ mem, Sept. 15, 2006, at 6.)
Plaintiffs then make the arguments that the nonanswering federal defendants have failed to offer proof as to either the date when decedent learned of the connection between his disease and his exposure to their products, or the date when he was diagnosed as suffering from AML, and that the motion is premature because pretrial discovery is required in order to determine the injury discovery date. Neither of these arguments aid them in meeting their burden on this branch of these dismissal motions.
Initially, plaintiffs’ position regarding the knowledge that the decedent must have had to be deemed to have discovered his injury for the purposes of CPLR 214-c (2) is simply wrong. This State’s highest court has explained that “when the Legislature used the phrase ‘discovery of the injury’ it meant discovery of the physical condition and not. . . the more complex concept of discovery of both the condition and the nonorganic etiology of that condition” (Matter of New York County DES Litig., 89 NY2d 506, 514 [1997]). Consequently, it is not when decedent learned that his AML was caused by exposure to the defendants’ products that is the controlling date, or even when the disease was diagnosed, but rather when he experienced the symptoms of that disease that is determinative for statute of limitations purposes (Searle v City of New Rochelle, 293 AD2d 735, 736 [2d Dept 2002] [“A plaintiffs cause of action for damages resulting from exposure to toxic substances accrues when the plaintiff begins to suffer the manifestations and symptoms of his or her physical condition, i.e. when the injury is apparent, not when the specific cause of the injury is identified”]).
Moreover, although the nonanswering federal defendants did not come forth with proof establishing the date of onset of the *969 decedent’s symptoms, they have, as discussed above, sufficiently established the accrual date of the personal injury claim by reference to plaintiffs’ own factual allegations in the state complaint. Thus, it was plaintiffs’ obligation, at a minimum, to come forward with an affidavit or other competent evidence demonstrating that decedent discovered his injury on a date later than 2001 (see Wemple v Firestone Tire & Rubber Co., 264 App Div 980, 980 [3d Dept 1942] [“Appellant has alleged facts in her affidavit which, if sustained, may lead to avoidance of the Statute of Limitations. Her affidavit should be considered in connection with the complaint”]).
Here, inexplicably, no such proof is offered. Certainly, by the time these motions were made, more than three years after the death of their father and almost IV2 years after the commencement of the federal action, plaintiffs must be in a position to state when it is claimed that the decedent discovered his injury. Their failure to present any evidence as to that date speaks volumes.
No more availing is plaintiffs’ assertion that the motion is premature because they require pretrial discovery in order to determine that date. Wholly unexplained is why they require information from the nonanswering federal defendants in order for them to know when their father began to experience the symptoms of AML.
Under these circumstances, where the state complaint supports the inference that the personal injury claim accrued in 2001, and plaintiffs have offered no evidence demonstrating that there is an issue of fact as to the accrual date, the court would be engaging in mere speculation if it accepted the unsupported assertion of plaintiffs’ counsel that the date of discovery of the decedent’s injury was the date of his death (cf. Goulding v Solomon, 123 Misc 2d 954, 957 [Sup Ct, Bronx County 1984] [“Neither in the complaint nor in the affidavit in opposition to the motion to dismiss do plaintiffs allege: when in 1981 they learned of the defendant’s alleged error, when they brought the same to defendant’s attention and whether he undertook to file refunds for 1976 and 1977. A new act of malpractice theory in regard to the filing of refunds could only be tenable if plaintiffs had made a prima facie factual showing that they brought defendant’s alleged error to his attention sufficiently early in 1981 for him to have prepared an amended 1977 return by April 15, 1981, and that he undertook to prepare the same but neglected to do so. The court will not create an issue of fact requir *970 ing trial by speculation that such might have been the situation”] [emphasis added]). Accordingly, the personal injury claim is dismissed as against the nonanswering federal defendants because it was not asserted for more than three years computed from the 2001 accrual of that cause of action.
2. Spousal Claim
In view of that determination, resolution of the attack upon the spousal claim requires no extended discussion. Because the spousal claim is one which is derivative and “has no existence separate and distinct from [decedent’s personal injury] claim,” dismissal of the personal injury claim “also requires dismissal of the [spousal claim], which depends on the same claim[s] of negligence” (Cody v Village of Lake George, 177 AD2d 921, 923 [3d Dept 1991]). Therefore, the spousal claim is dismissed as against the nonanswering federal defendants.
3. Wrongful Death Claim
A wrongful death action must be commenced within two years after the decedent’s death (EPTL 5-4.1). Here, it is conceded that decedent died more than two years prior to the March 7, 2006 commencement of this lawsuit. For that reason, the court also grants the nonanswering federal defendants’ motions to dismiss the wrongful death claim (Public Adm’r of Kings County v Canada Dry Bottling Co. of N.Y., 16 AD3d 397 [2d Dept 2005]).
B. Timeliness of Federal Claims
As noted, in the federal action plaintiffs also asserted the personal injury claim, the spousal claim and the wrongful death claim. A further condition of plaintiffs’ reliance upon section 205 (a) against the answering federal defendants as to each of the three causes of action is that each claim was timely asserted in the federal action (Kramer v Herrera, 188 AD2d 1038, 1039 [4th Dept 1992], appeal dismissed, lv denied 81 NY2d 993 [1993] [“timely commencement of the prior action is a condition precedent to the invocation of CPLR 205(a)”]). On their summary judgment motions, Brant, Kimberly and Bowater all attack the timeliness of the three causes of action as asserted in the federal action.
1. The Personal Injury and Spousal Claims In support of their motions, the answering federal defendants rely upon the same arguments as those put forth by the nonan *971 swering defendants. Even if their motions were founded only upon those arguments, the answering federal defendants would be entitled to a ruling that the personal injury claim was not timely asserted in the federal action, based upon this court’s determination that this cause of action accrued in 2001, which is more than three years before the federal action was commenced.
These three defendants, however, have offered more than those arguments in support of their summary judgment applications. Specifically, they have presented medical records obtained in the limited pretrial discovery that has been conducted to date. Among those records is an “Initial Comprehensive Examination” report of Dr. S.L. Valenstein, which states that during a routine physical examination in January 2001, the decedent had been found to be suffering from anemia, and that two courses of weekly injections of vitamin B12 had not had any response. Defendants have also presented an April 6, 2002 “Diagnostic Report” issued by Dr. Frank A. Bauer, which states that: “The composite peripheral blood and bone marrow findings are consistent with ongoing high grade myelodysplastic syndrome. Hemodilute aspirate smears reveal an average of 16% blasts. The morphologic findings are not specific, however, they raise the possibility of early emerging acute myelogenous leukemia” (Smith affirmation, exhibit D [emphasis added]). Finally, defendants proffer Dr. Valenstein’s May 28, 2002 “Progress Note,” which reports the decedent’s “Chief Complaint” as “Acute leukemia in first remission” (id. exhibit C at 3).
Taken together, this evidence demonstrates that as early as 2001, the decedent began experiencing symptoms consistent with the disease that took his life, and that by no later than May 28, 2002, he had been diagnosed with acute leukemia. That proof is sufficient to entitle the answering federal defendants to a determination that the personal injury claim was not timely when it was asserted in the federal action, and that section 205 (a) is not available to plaintiffs in this action as to that claim. Based upon that conclusion, these defendants would also be entitled to summary judgment dismissing the personal injury claim in this case. Consequently, the burden shifted to plaintiffs to demonstrate that an issue of fact exists as to the statute of limitations issue related to the personal injury claim (cf. Edelson v Placeway Constr. Corp., 33 AD3d 844 [2d Dept 2006]).
In opposition, plaintiffs repeat the arguments unsuccessfully proffered by them in response to the nonappearing federal defendants’ dismissal motions, but also submit affidavits from *972 Ms. Barlow and her husband asserting, in hearsay fashion, that the decedent was never made aware of the toxic substances that he had been exposed to during his employment with the New York Times. As the three moving defendants correctly argue, however, those affidavits are without relevance to the statute of limitations issue involved at bar, since they do not address, in any manner, the question of when the decedent first discovered his injury.
Thus viewed, plaintiffs have failed to meet their burden as the opponents of these motions, and, consequently, the answering federal defendants are granted summary judgment dismissing the personal injury claim as asserted against them in this action (see Searle v City of New Rochelle, supra). Based upon that determination, they are also granted summary judgment dismissing the spousal claim (Cody v Village of Lake George, supra).
2. The Wrongful Death Claim
Since the decedent died on July 13, 2003 and the federal action was commenced on July 12, 2005, plaintiffs timely asserted the wrongful death claim in the federal action (EPTL 5-4.1). Therefore, solely as relates to this claim, plaintiffs are entitled to the benefits of section 205 (a) as against each of the three answering federal defendants absent any other deficiency in their showing that they have satisfied the section 205 (a) elements.
In fact, none of the answering federal defendants offers any challenge to the application of section 205 (a) other than that the personal injury claim and the spousal claim were time-barred when the federal action was commenced. Consequently, because the state complaint was served upon each of them within six months from the January 26, 2006 date when the federal dismissal order was entered,[8] the wrongful death claim asserted in this case survives as against Brant, Bowater and Kimberly (see Cook v Deloitte & Touche USA, 13 Misc 3d 1203[A], 2006 NY Slip Op 51675DJJ, *6 [Sup Ct, NY County 2006] [the six-month period within which plaintiff must serve defendants in the new action under section 205 (a) “beg(ins) upon the entry of the order dismissing (the prior action)”]).
*973 V Further Proceedings
Finally, it does not appear that any judicial intervention has been sought in this action except as to the motions filed by all defendants. Now that a determination has been made that the action shall proceed solely against Brant, Bowater and Kimberly, and only upon the wrongful death claim, a preliminary conference must be conducted so that a schedule may be established for plaintiffs and the three remaining defendants to conduct all required pretrial discovery.
VI. Conclusion
As one commentator has cautioned:
“The lawyer about to discontinué [an action] must always remember, however, that a voluntary discontinuance, by any method at all, is an exception to CPLR 205 (a) and does not get the six months. A discontinuing plaintiff planning to start over must always make sure either that the original statute of limitations is still alive, or that the plaintiff has in hand an agreement by the defendant not to interpose the statute of limitations defense in the new action.” (Siegel, NY Prac § 298, at 485 [4th ed].)
In this case, plaintiffs did not merely fail to timely commence their claim for personal injuries sustained by their deceased father, but also did not adequately consider the impact of their voluntary dismissal of their federal court action. By overlooking the governing time limitations and procedural rules, they triggered certain of the “mines” that remain in the field of the law, to their significant detriment.

. Ms. Barlow was appointed as administratrix of the estates of both of her parents, while Mr. Casella was appointed as administrator of his father’s estate.

. The federal dismissal notice also discontinued the federal action against “Unknown Defendant Manufacturers of newsprint ink 1-100” and “Unknown Defendant Manufacturers of newsprint 1-100.” Since those defendants are unknown, they are not before this court and their status is not addressed by this decision and order.

. The federal dismissal order was entered on January 26, 2006.

. Mr. Casella’s representative capacity is incorrectly designated as “administratrix” in the caption of the state complaint, just as it was in the federal complaint.

. CPLR 3217 (b) provides that:
“Except as provided in subdivision (a), an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper. After the cause has been submitted to the court or jury to determine the facts the court may not order an action discontinued except upon the stipulation of all parties appearing in the action.”
Like rule 41 (a) (1), CPLR 3217 (a) allows discontinuance of an action without a court order in certain circumstances, one of which is when the defendants have not yet answered the complaint.

. Of course, as is now established law, absent the reference to the neglect to prosecute, Judge Brieant’s dismissal order would not have been deemed to terminate the plaintiffs prior federal action in a manner that would have barred plaintiff in Dyer from resort to section 205 (a), even if he had not stated that his order was “without prejudice” (Extebank v Finkelstein, supra).

. Based upon this conclusion, the court does not reach the additional arguments put forth by certain of the nonanswering defendants in support of their contention that section 205 (a) may not be invoked against them by plaintiffs.

. Bowater and Kimberly do not dispute plaintiffs’ assertion that they were served with the state complaint on June 29 and July 5, 2006, respectively, while Brant admits that it was served on July 5, 2006.