**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TERRY MITCHELL,

     Plaintiff - Appellant,

v.

RICHARD WARREN ROBERTS,

     Defendant - Appellee.

No. 21-4055

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:16-CV-00843-DAO)**

_____

Walter M. Mason of Dewsnup King Olsen Worel Havas Mortensen, Salt Lake City, Utah for Plaintiff-Appellant.

Dick J. Baldwin (Troy L. Booher with him on the brief) of Zimmerman Booher, Salt Lake City, Utah, for Defendant-Appellee.

_____

Before **CARSON**, **BRISCOE**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

In 1981, appellee Richard Warren Roberts was a federal prosecutor preparing

for a murder trial in Salt Lake City, Utah. Appellant Terry Mitchell, then a teenager,

was a key trial witness for the prosecution. Thirty-five years later, in 2016, Ms.

Mitchell sued Mr. Roberts in federal district court in Utah alleging he sexually assaulted her throughout the criminal trial proceedings.

Mr. Roberts moved to dismiss the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6), contending Ms. Mitchell's claims were time barred. Ms. Mitchell conceded her claims had expired under the original statute of limitations but asserted they were revived when the Utah legislature enacted Utah Code section 78B-2-308(7) ("Revival Statute") in 2016. The Revival Statute permitted certain civil claims against alleged perpetrators of child sexual abuse to proceed, even if "time barred as of July 1, 2016," if "brought within 35 years of the victim's 18th birthday, or within 3 years of the effective date of this Subsection (7), whichever is longer." § 78B-2-308(7). Ms. Mitchell asserted her claims were timely filed under the Revival Statute.

At Ms. Mitchell's request, the magistrate judge[1] certified questions to the Utah Supreme Court concerning the validity of the Revival Statute. The Utah Supreme Court accepted the certification request and, after briefing and oral argument, issued a detailed opinion concluding the Utah legislature was prohibited from retroactively reviving time-barred claims in a manner that deprived defendants like Mr. Roberts of a vested statute of limitations defense. Based on the Utah Supreme Court's conclusion that the Revival Statute was unconstitutional, Mr. Roberts again moved to

---

[1] The parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Throughout this opinion, we also refer to the magistrate judge as "the district court."

dismiss with prejudice under Rule 12(b)(6). Ms. Mitchell sought voluntary dismissal *without* prejudice under Federal Rule of Civil Procedure 41(a)(2). According to Ms. Mitchell, the Utah Supreme Court had not foreclosed the possibility that the Utah Constitution would be amended to permit legislative revival of time-barred child sexual abuse claims, and on that basis, she proposed a curative condition that would allow her to sue Mr. Roberts if such an amendment came to pass. The magistrate judge rejected Ms. Mitchell's argument and dismissed her complaint with prejudice.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     Background

### A.     Ms. Mitchell sues Mr. Roberts in federal district court in Utah.

In 2016, the Utah legislature passed House Bill 279—amending the statute of limitations at Utah Code § 78B-2-308(7) and creating a window for the revival of time-barred civil claims against alleged perpetrators of child sexual abuse. H.B. 279, 61st Leg., 2016 Gen. Sess. (Utah 2016). Through the Revival Statute, the legislature recognized "child sexual abuse is a crime that hurts the most vulnerable in our society," "destroys lives," and that "it takes decades for the healing necessary for a victim to seek redress." § 78B-2-308(1)(a), (e). Where an action would otherwise be time barred "as of July 1, 2016," the Revival Statute allowed it to be "brought within 35 years of the victim's 18th birthday, or within [3] years of the effective date of this Subsection (7), whichever is longer." *Id.* § 78B-2-308(7). It was signed into law on March 29, 2016, with an effective date of May 10, 2016. *See* Utah H.B. 279.

3

On March 16, 2016, before the Revival Statute was enacted, Ms. Mitchell filed a diversity action against Mr. Roberts in federal district court in Utah claiming he sexually assaulted her in 1981.[2] Mr. Roberts moved to dismiss with prejudice under Federal Rule of Civil Procedure 12(b)(6), arguing Ms. Mitchell's claims were time barred. After the Revival Statute became effective, but before the magistrate judge ruled on the pending motion to dismiss, Ms. Mitchell voluntarily dismissed her action without prejudice under Federal Rule of Civil Procedure 41(a)(1).

On July 29, 2016, the day after she voluntarily dismissed her first lawsuit, Ms. Mitchell initiated a new federal case in Utah, filing a substantially similar complaint against Mr. Roberts.[3] While she conceded her claims against Mr. Roberts were time barred "as of July 1, 2016," § 78B-2-308(7), Ms. Mitchell maintained her case was timely filed under the Revival Statute. Mr. Roberts then moved to dismiss this second lawsuit with prejudice under Rule 12(b)(6). He argued the "new legislation upon which [Ms.] Mitchell rests her entire case"—the Revival Statute—was "invalid under longstanding Utah law." Aplt. App. at 34, 38. Utah law permitted only the extension

---

[2] In this first complaint, Ms. Mitchell claimed the statute of limitations tolled under Utah Code section 78-12-35 because Mr. Roberts allegedly left Utah in March 1981 and "never returned" to the state. Supp. App. vol. 1 at 2 (Pl.'s Compl. and Jury Demand 10-11, ECF No. 2). Her complaint also invoked the "delayed discovery" statute of limitations provision because Ms. Mitchell had repressed her memories of the alleged abuse until 2013. *Id.* When Ms. Mitchell refiled her lawsuit, she did not reassert tolling or delayed discovery allegations.

[3] In her opening brief, Ms. Mitchell explains she chose to dismiss the first complaint—rather than to amend it—because she anticipated Mr. Roberts would argue the Revival Statute only "revived" claims filed after May 10, 2016—the statute's effective date. *See* Opening Br. at 14 n.38.

of limitations periods "while active," Mr. Roberts contended, but prohibited "revival once [the statute of limitations had] expired." *Id.* at 39. According to Mr. Roberts, Ms. Mitchell's case fell into the latter category, so her claims against him were time barred and "subsequent legislation [did] not alter that inescapable fact." *Id.* at 41.

Ms. Mitchell opposed Mr. Roberts's motion and, in the alternative, asked the magistrate judge to certify the case to the Utah Supreme Court. In support of certification, Ms. Mitchell observed the Utah Supreme Court had not yet "resolved the precise question of whether the courts must give effect to [the Revival Statute's] clearly stated legislative intent" to revive previously time-barred child sexual abuse claims. *Id.* at 76 (capitalization omitted). She also argued that "[d]ecisions by the Utah Supreme Court are inconsistent—or at least some are incomplete—regarding the duty of the courts to give effect" to such legislative intent. *Id.* (capitalization omitted). Mr. Roberts opposed Ms. Mitchell's certification request, contending "state law on the dispositive issue is settled." Supp. App. vol. 1 at 50 (emphasis omitted).

The magistrate judge granted Ms. Mitchell's request and certified two questions to the Utah Supreme Court[4]: (1) "Can the Utah Legislature expressly revive time-barred claims through a statute?" and (2) "[D]oes the language of Utah Code section 78B-2-308(7), expressly reviving claims for child sexual abuse that were

---

[4] After the Utah Supreme Court accepted the certification request, the magistrate judge administratively closed the federal case. All pending motions were mooted during the administrative closure "subject to being reopened or renewed when (1) the Utah Supreme Court issues a ruling . . . and (2) the parties file a motion within thirty (30) days of such a decision, attaching the decision and identifying which motions need to be reopened, renewed, or refiled." Aplt. App. at 6.

5

barred by the previously applicable statute of limitations as of July 1, 2016, make unnecessary the analysis of whether the change enlarges or eliminates vested rights?"[5] Aplt. App. at 106-07. The Utah Supreme Court accepted the certification request and also ordered the parties to submit supplemental briefing on a related question of state constitutional law—whether the Utah Constitution gives the Utah legislature the power to revive time-barred claims.[6]

## B. The Utah Supreme Court holds the Revival Statute is unconstitutional.

Three years later, on June 11, 2020, the Utah Supreme Court issued a unanimous opinion holding "the Utah Legislature is constitutionally prohibited from retroactively reviving a time-barred claim in a manner depriving a defendant of a vested statute of limitations defense." *Mitchell v. Roberts*, 2020 UT 34, ¶ 5, *reh'g denied* (July 13, 2020). Because the Utah Supreme Court's holding that the Revival Statute was unconstitutional informed the district court's decision to dismiss Ms. Mitchell's case with prejudice, we describe the opinion in detail.

---

[5] At the magistrate judge's request, both parties submitted proposed certification questions, but the magistrate judge ultimately submitted the questions she had formulated.

[6] The Utah Supreme Court queried: "Under the Utah Constitution, does the Utah Legislature have the power to revive a claim that was barred by the previously applicable statute of limitations, and if so, what limitations, if any, does the Utah Constitution impose on that power?" Supp. App. vol. 1 at 55-56. The supreme court directed the parties to, among other matters, "examine the original public meaning of the Utah Constitution," the grant of legislative power in the due process clause, and "what standard or constitutional analysis Utah courts should apply in assessing whether a specific legislative enactment that explicitly purports to revive time-barred claims comports with the Utah Constitution." *Id.* at 56.

The Utah Supreme Court answered the certified questions by looking first to its precedent, which "foreclosed" Ms. Mitchell's position that the legislature had the "power to vitiate a vested right in a ripened limitations defense." *Id.* ¶ 10. "Beginning in 1897 and continuing for over a century, [the Utah Supreme Court] has repeatedly stated that the legislature lacks the power to revive a plaintiff's claim in a manner that vitiates a 'vested' right of a defendant." *Id.* ¶ 11. This "vested rights" limitation on the Utah legislative power "is firmly rooted in [Utah] case law" and "has long been extended to the specific vested right asserted by [Mr.] Roberts—the right to retain a statute of limitations defense after a plaintiff's claim has expired under existing law." *Id.* From *In re Handley's Estate*, 49 P. 829, 832 (Utah 1897), where the Utah Supreme Court first articulated the "vested rights" limitation on legislative power, to *Ireland v. Mackintosh*, 61 P. 901, 902 (Utah 1900), which extended that limitation to the specific right asserted here by Mr. Roberts, the Utah Supreme Court concluded its long-standing precedent "merits respect as a matter of *stare decisis*." *Id.* ¶¶ 11-14; *see also id.* ¶ 35 ("These cases show that founding-era Utahns understood, according to the constitutional orthodoxy of the era, that the Utah Legislature lacked the power to retroactively divest vested rights."). And that precedent made clear the "vested rights" limitation operated as a "hard limitation on the legislative power—a clear prohibition on legislative attempts to vitiate vested rights." *Id.* ¶ 25.

The Utah Supreme Court further explained the "vested rights" limitation is "consistent with the original understanding of the Utah Constitution." *Id.* ¶ 30. Early

7

Utahns "viewed such legislative encroachment into the domain of the judiciary as unconstitutional both as a matter of the principle of separation of powers itself and under the due process clause." *Id.* ¶ 34. The Utah Supreme Court engaged in a historical analysis detailing how original understandings in the era of the framing of the Utah Constitution wove together due process, legislative power, and vested rights:

> In the era of the framing of the Utah Constitution, the public understood the principle of "due process," at least in part, as a matter relegating certain functions to the courts and not the legislature. The legislature was viewed as prohibited from exercising judicial functions—in interpreting and applying the law to the disposition of a case in which a party's rights or property were in dispute. "This meant the legislature could not retrospectively divest a person of vested rights that had been lawfully acquired under the rules in place at the time." The legislature "could enact general laws for the future, including the rules for acquisition and use of property, but [it] could not assume the 'judicial' power of deciding individual cases." Retroactive divestment statutes were viewed as judicial in nature (in the nature of "deciding individual cases") because these laws were backward looking and operated to deprive individuals of rights and property "acquired under the rules in place at the time" of acquisition. . . . Thus, valid legislative acts, in contrast to retroactive divestment statutes, stated the law going forward rather than "determin[ing] specific applications of law or . . . punish[ing] past acts"—functions relegated to the judiciary.

*Id.* ¶ 34 (alterations in original) (footnotes and citations omitted).

This historical analysis confirmed "[t]he key question that arose at the [state constitutional] convention was not *whether* the legislature lacked the power to divest vested rights"—it did—"but *which rights* qualified as vested." *Id.* ¶ 42 (emphases added). "A ripened limitations defense," the Utah Supreme Court determined, "*was a*

*vested right* that could not be retroactively divested by the legislature." *Id.* ¶ 46 (supreme court's emphasis); *see also id.* ¶¶ 48-49.

Finally, the Utah Supreme Court recognized the public policy objectives animating the Revival Statute but ultimately determined "the limits on the legislature remain despite the reasonable basis for its policy judgments in this field." *Id.* ¶ 10; *see also id.* ¶¶ 6-7, 50-52.

## C.    Ms. Mitchell seeks voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(2).

After the Utah Supreme Court decided the certified questions, the underlying federal proceedings picked up where the parties left off. Mr. Roberts moved to reopen his previously filed motion to dismiss, contending "the Utah Supreme Court's holding confirms that each of [Ms.] Mitchell's claims is time-barred and compels dismissal of [Ms.] Mitchell's Complaint with prejudice." Aplt. App. at 136. In response, Ms. Mitchell moved for voluntary dismissal *without* prejudice, recognizing "[Mr.] Roberts achieved a determination (at least for the time being) of the validity of the Revival Statute. That determination is conclusive until[,] . . . as the Utah Supreme Court has suggested, the Utah Constitution is amended." *Id.* at 146. According to Ms. Mitchell, the Utah Supreme Court "indicated that the only remedy for victims of child sexual abuse whose claims are time-barred is through a constitutional amendment, which legislators have announced they are exploring." *Id.* at 142 (footnotes omitted). Anticipating a change in the law, Ms. Mitchell urged the magistrate judge to grant dismissal without prejudice on the condition that she could

9

sue Mr. Roberts again only if the Utah Constitution was amended to permit legislative revival of time-barred claims.

Ms. Mitchell believed this approach—voluntary dismissal without prejudice subject to a curative condition—would mitigate any potential prejudice to Mr. Roberts because he would immediately "enjoy the full benefit of his defense" to her claims and would face no future litigation unless the Utah Constitution were amended. *Id.* at 144; *see also id.* at 197, 207. She emphasized the equities favored her proposed without-prejudice disposition: "Unless this matter is dismissed *without* prejudice," Ms. Mitchell contended, "a highly unjust and perverse outcome will result" because, "[a]fter fighting for the validity of the Revival Statute, [she] would be the only one among all the victims of child sex abuse in Utah whose cases were previously time-barred by a prior statute of limitations who cannot benefit from an amendment to the Utah Constitution, which the Utah Supreme Court suggested in its Opinion." *Id.* at 205.

The magistrate judge ruled against Ms. Mitchell, dismissing the case with prejudice.

This timely appeal followed.

## II.    Discussion

The issue before us is narrow. There is no dispute that Utah law grants Mr. Roberts a vested statute of limitations defense; Ms. Mitchell concedes her claims are time barred under Utah law; and Ms. Mitchell cannot rely on the Revival Statute because it is unconstitutional. Ms. Mitchell's appellate challenge centers on the

10

district court's decision to dismiss her lawsuit against Mr. Roberts *with* prejudice, rather than to grant voluntary dismissal *without* prejudice on the condition she proposed.

Federal Rule of Civil Procedure 41 governs voluntary and involuntary dismissals.[7] Typically, when a defendant has not filed an answer or moved for summary judgment, Rule 41(a)(1) permits a plaintiff to dismiss an action without a court order simply by filing a notice of dismissal. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). But a voluntary dismissal "operates as an adjudication on the merits" if the plaintiff previously voluntarily dismissed an action based on the same claim. Fed. R. Civ. P. 41(a)(1)(B). Because Ms. Mitchell voluntarily dismissed her first lawsuit, and then refiled many of the same claims against Mr. Roberts after the Revival Statute's effective date, she was required, under Rule 41(a)(2), to seek leave to dismiss her second lawsuit without prejudice.

Rule 41(a)(2) states, "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request *only* by court order." Fed. R. Civ. P. 41(a)(2) (emphasis added); *see also* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2364 (4th ed. 2022 update). Ordinarily, a dismissal under Rule 41(a)(2) will be without prejudice. *See* Fed. R. Civ. P. 41(a)(2) ("Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."). Rule 41(a)(2) also permits a court to dismiss an action without prejudice "on terms

---

[7] Involuntary dismissals under Federal Rule of Civil Procedure 41(b) are not at issue in this case.

that the court considers proper." *Id.* "The rule is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (quoting *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir. 1996)).

We review for an abuse of discretion the district court's decision denying voluntary dismissal without prejudice under Rule 41(a)(2) and declining to impose a curative condition. *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997) (voluntary dismissal); *Am. Nat'l Bank & Tr. Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) (curative conditions). As a general matter, a court abuses its discretion if it renders a decision that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Phillips USA*, 77 F.3d at 357 (quoting *United States v. Robinson*, 39 F.3d 1115, 1116 (10th Cir. 1994)). "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." *Ohlander*, 114 F.3d at 1537 (citation omitted).

Ms. Mitchell contends the district court abused its discretion by denying her motion under Rule 41(a)(2) and advances several arguments to support reversal. She contends the district court (1) applied the wrong legal standard by adopting a per se rule that the loss of a vested statute of limitations defense is an absolute bar to voluntary dismissal without prejudice; (2) failed to adequately consider her equities in the Rule 41(a)(2) analysis; and (3) mistakenly rejected her proposed curative

12

condition because, according to Ms. Mitchell, it obviated any prejudice to Mr.

Roberts. We consider and reject each argument.

**A.    The district court's decision to deny Ms. Mitchell's request for voluntary dismissal without prejudice was not an abuse of discretion.**

In *Ohlander v. Larson*, 114 F.3d 1531 (10th Cir. 1997), we articulated the

analytical framework district courts in this circuit should follow when considering a

motion for voluntary dismissal under Rule 41(a)(2). A district court should normally

grant dismissal without prejudice, absent "legal prejudice" to the defendant. *Id.* at

1537. As we have acknowledged, "The parameters of what constitutes 'legal

prejudice' are not entirely clear, but relevant factors the district court should consider

include: [1] the opposing party's effort and expense in preparing for trial;

[2] excessive delay and lack of diligence on the part of the movant; [3] insufficient

explanation of the need for a dismissal; and [4] the present stage of litigation." *Id.*

(citing *Phillips U.S.A., Inc.*, 77 F.3d at 358).[8] "Each factor need not be resolved in

favor of the moving party for dismissal to be appropriate, nor need each factor be

resolved in favor of the opposing party for denial of the motion to be proper." *Id.*

(citation omitted). Rather, these traditional factors serve as "practical" guideposts for

a district court tasked with deciding what constitutes "legal prejudice"—the ultimate

---

[8] We refer to these four factors as "the traditional factors," like we did in *Ohlander*. *See* 114 F.3d at 1538; *see also Baeke*, 413 F.3d at 1124 (explaining legal prejudice is a function of these four "practical" factors).

question to be answered, on a case-by-case basis, when deciding whether to grant voluntary dismissal without prejudice. *Baeke*, 413 F.3d at 1124.

The traditional factors are "by no means exclusive" and "[a]ny other relevant factors should come into the district court's equation" when deciding a motion under Rule 41(a)(2). *Ohlander*, 114 F.3d at 1537. For example, as *Ohlander* itself demonstrates, a district court is "obligated to consider the novelty of the circumstances surrounding th[e] case." *Id. Ohlander* involved an international child custody dispute where a young child was repeatedly uprooted during the first four years of her life by parents seeking to reestablish contact with her (but not necessarily with one another). *Id.* at 1534-35. After the parents initiated two custody proceedings—one in federal district court and another in Sweden—the mother moved under Rule 41(a)(2) to dismiss her federal case because the child no longer lived in the United States. *Id.* at 1535-36. We emphasized the district court was "impressed with a duty to exercise its discretion by carefully appraising . . . factors unique to the context of th[e] case," such as "interests in comity, uniform interpretation of the [Hague] Convention and the importance of giving import to the Hague Convention's intended purpose as relevant to the motion to dismiss." *Id.* at 1537.

*Ohlander* also teaches district courts "should endeavor to insure substantial justice is accorded to both parties" under Rule 41(a)(2). *Id.* To that end, district courts should "consider the equities facing not only the defendant but also those facing the plaintiff." *Id.* And, in what *Ohlander* described as "complex, emotional

14

case[s]," it is "critically important" for the district court to "give the equities of the plaintiff the attention deserved." *Id.*

### 1. The district court resolved Ms. Mitchell's motion under the correct legal standard.

Ms. Mitchell contends the magistrate judge applied the wrong legal standard under Rule 41(a)(2) by "erroneously deciding that [Mr.] Roberts's statute of limitations defense created an absolute bar to dismissal without prejudice." Opening Br. at 8. According to Ms. Mitchell, the magistrate judge disregarded the factors in *Ohlander* and instead "imposed a bright-line rule that loss of a statute-of-limitations defense in Utah is per se legal prejudice." *Id.* at 5. Mr. Roberts urges affirmance, contending the magistrate judge "carefully consider[ed] the relevant factors and weigh[ed] the equities facing both parties . . . [She] did not adopt a per se rule or base [her] decision on any single factor." Answer Br. at 10. We agree with Mr. Roberts.

As a threshold matter, the parties debate how the loss of a vested statute of limitations defense factors into the analysis under Rule 41(a)(2). There is some disagreement among the federal courts of appeal as to whether loss of a statute of limitations defense constitutes per se legal prejudice. *Compare Phillips v. Ill. Cent. Gulf R.R.*, 874 F.2d 984 (5th Cir. 1989) (loss of statute of limitations defense is per se legal prejudice); *Wojtas v. Cap. Guardian Tr. Co.*, 477 F.3d 924 (7th Cir. 2007) (same); *Metro. Fed. Bank, F.S.B. v. W.R. Grace & Co.*, 999 F.2d 1257 (8th Cir. 1993) (same); *with McCants v. Ford Motor Co.*, 781 F.2d 855 (11th Cir. 1986) (loss of statute of limitations defense is a factor to be weighed with others). But we need not

15

wade into this skirmish because the magistrate judge never held, as Ms. Mitchell contends, that the loss of a vested statute of limitations defense is an absolute bar to voluntary dismissal without prejudice. Rather, as we will explain, the magistrate judge appropriately assessed Ms. Mitchell's request for voluntary dismissal under the *Ohlander* balancing framework.

First, the magistrate judge did not impose a bright-line rule that dismissal with prejudice under Rule 41(a)(2) is automatically required where, as here, the defendant would otherwise lose a statute of limitations defense under state law. Rather, appropriately guided by *Ohlander*, the magistrate judge engaged in a methodical analysis, explaining: "The court first addresses the Tenth Circuit's list of factors to be considered on a Rule 41(a)(2) motion to dismiss, then turns to whether the loss of a statute of limitations defense constitutes legal prejudice, and other equitable considerations." Aplt. App. at 216.

Beginning with the traditional factors from *Ohlander*, the magistrate judge first considered Mr. Roberts's minimal effort and expense in preparing for trial, the early stage of the litigation, Ms. Mitchell's diligence, and her adequate explanation of the need for dismissal without prejudice. These factors, the court determined, supported Ms. Mitchell or were neutral. The magistrate judge then took account of "the equities facing both the plaintiff and the defendant," *id.* at 222, and, on balance, found they favored Mr. Roberts. The magistrate judge also identified a "unique" consideration in this case—Mr. Roberts's right to retain a statute of limitations defense under Utah law.

16

Recall, *Ohlander* instructed district courts evaluating a request for voluntary dismissal without prejudice to consider the traditional factors, the equities facing both the plaintiff and the defendant, and "any additional factors unique to the context of th[e] case." 114 F.3d at 1537; *see also Baeke*, 413 F.3d at 1124. Nowhere did the magistrate judge say her ruling was animated by a per se rule nor does the court's analysis reflect she relied on any single factor. *Ohlander* provides a useful counterpoint. There, we found the district court had abused its discretion by denying a without-prejudice dismissal "*solely* on the grounds of [] contempt and *without considering any additional circumstances*." 114 F.3d at 1537 (emphases added). Here, by contrast, the magistrate judge viewed the loss of a vested statute of limitations defense as an "additional factor[] unique to the context of this case," 114 F.3d at 1537, which she weighed together with the traditional factors and the parties' equities. This was proper under our precedents.

Next, to the extent Ms. Mitchell contends the magistrate judge's fidelity to the Utah Supreme Court opinion amounted to application of a per se rule, in contravention of *Ohlander*, we reject the argument. The magistrate judge acted properly, as Mr. Roberts points out, in relying on the Utah Supreme Court's opinion in the Rule 41(a)(2) analysis.

A district court sitting in diversity must apply the law of the state as it has been determined by the highest court of that state. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). Certification is an "important tool for federal courts sitting in diversity[] since it frees them from

having to speculate how state courts will decide important questions of state law." *Grover v. Eli Lilly & Co.*, 33 F.3d 716, 719 (6th Cir. 1994); Utah R. App. P. 41 (allowing certification requests for legal questions by federal courts). "When a state supreme court accepts a certified question, it voluntarily undertakes a substantial burden and its resolution of the issue must not be disregarded." *Grover*, 33 F.3d at 719.

Here, Ms. Mitchell is the party who requested certification, insisting "the question certified is a controlling issue of law in a proceeding pending before the certifying court." Aplt. App. at 76 (citing Utah R. App. P. 41). Indeed, the Utah Supreme Court explained its "role in addressing [the] certified questions [was] to facilitate the disposition" of the underlying federal case. *Mitchell*, ¶ 4; *see also id*. at n.2 (citation omitted) (noting the Utah Supreme Court's role on certification is "to resolve disputed questions of state law in a context and manner useful to the resolution of a pending federal case"). The district court likewise understood that the Utah Supreme Court's answers to the questions certified would be directly relevant to deciding the parties' cross motions for dismissal. *See Ohlander*, 114 F.3d at 1537 (recognizing "the importance of giving import to the Hague Convention's intended purpose as relevant to the motion to dismiss" in the Rule 41(a)(2) analysis). Under the circumstances, it comes as no surprise that the Utah Supreme Court's opinion

18

figured prominently in the district court's analysis of Ms. Mitchell's request to dismiss the case without prejudice.[9]

Moreover, the magistrate judge's decision to honor the Utah Supreme Court's opinion in adjudicating the federal case aligns with the interests in comity directly implicated in the certification context. *See Richardson ex rel. Richardson v. Navistar Int'l Transp. Corp.*, 231 F.3d 740, 743 (10th Cir. 2000) ("'Ordinarily, a state court's answer to a certified question is final,' binding the parties and therefore becoming the law of the case." (citation omitted)). Indeed, *Ohlander* identified "interests in comity" as a "factor[] unique to the context of [a] case" that district courts should "carefully apprais[e]" in the Rule 41(a)(2) analysis. 114 F.3d at 1537.

The magistrate judge also correctly understood the holding of the Utah Supreme Court's opinion and the import of that decision in the federal case. The Utah Supreme Court explained that "for well over a century we have specifically held that a defendant acquires a 'vested right' in a statute of limitations defense once the limitations period has run." *Mitchell*, ¶ 25. Under Utah law, vested rights are a "well-established class of property," *id.* ¶ 43, "beyond the reach of legislative authority" and "protected from retroactive legislative interference," *id.* ¶¶ 48-49. Accordingly, the Utah Supreme Court held that, under Utah law, Mr. Roberts acquired a vested right in his statute of limitations defense.

---

[9] If Ms. Mitchell now argues the district court erred by relying too heavily on the Utah Supreme Court's opinion, her own litigation strategy invited that outcome.

Under these circumstances, the district court concluded dismissal without prejudice would deprive Mr. Roberts of a vested right under Utah law, resulting in legal prejudice to him that outweighed other relevant considerations in the *Ohlander* analysis. The magistrate judge's decision does not demonstrate an erroneous application of a per se legal rule, as Ms. Mitchell contends, but rather, the correct application of Utah law. We discern no abuse of discretion.

### 2. The district court did not give insufficient weight to Ms. Mitchell's equities.

In *Ohlander*, we explained that, in adjudicating a motion under Rule 41(a)(2), a district court "should endeavor to insure substantial justice is accorded to both parties," 114 F.3d at 1537—this requires district courts to consider the equities advanced by both the plaintiff and the defendant. We observed that in a "complex, emotional case," "it is critically important when considering a motion to dismiss, the court give the equities of the plaintiff the attention deserved." *Id.* Here, the magistrate judge considered both parties' equities and concluded they weighed in favor of Mr. Roberts and dismissal with prejudice.

On appeal, Ms. Mitchell contends hers is precisely the sort of complex, emotional case contemplated by *Ohlander* yet her equities were not given the attention deserved. There can be no serious question the magistrate judge confronted a "complex, emotional case" when adjudicating Ms. Mitchell's motion under Rule 41(a)(2), but we find no abuse of discretion in the district court's assessment of the equities.

20

As alleged in Ms. Mitchell's complaint, she was sixteen years old when she met Mr. Roberts during a criminal prosecution in which he was a prosecutor and she was a government witness. She alleged Mr. Roberts repeatedly sexually assaulted her and coerced her to keep silent. According to Ms. Mitchell, the abuse—which Mr. Roberts denies[10]—caused her years of significant physical and emotional pain.

Under the circumstances, Ms. Mitchell contends the magistrate judge should have given more weight under *Ohlander* to the unique nature of child sexual abuse claims, which animated the Revival Statute.[11] Ms. Mitchell points to legislative history explaining that "research over the last 30 years has shown that it takes decades for children and adults to pull their lives back together and find the strength to face what happened to them." § 78B-2-308(1)(b). Ms. Mitchell also observes the Utah Supreme Court, despite holding the Revival Statute unconstitutional, "acknowledge[d] the reasonable policy basis for the judgment the legislature made in seeking to revive previously time-barred claims asserted by victims of child-sex abuse." *Mitchell*, ¶ 6; *see id.* ¶ 50 (recognizing that child sexual abuse is a "'massive

---

[10] In his motion to dismiss, Mr. Roberts asserted he had "a brief, consensual intimate relationship [with Ms. Mitchell] after her role in the . . . trial ended." Aplt. App. at 33.

[11] Ms. Mitchell did not specifically argue in the district court, as she does now, that the equities favored her because of the nature of child sexual abuse claims and the policy objectives underlying the Revival Statute. *Cf.* Aplt. App. at 142-43, 149. Mr. Roberts does not contend these arguments are waived on appeal. Under the circumstances, we exercise our discretion to address them. *United States v. Jarvis*, 499 F.3d 1196, 1201-02 (10th Cir. 2007) ("Whether to address the argument despite the litigant's failure to raise it below is subject to this court's discretion based on the circumstances of the individual case." (citation omitted)).

national problem' whose devasting effects . . . often span a lifetime," the supreme court "appreciate[d] the moral impulse and substantial policy justifications" animating the Revival Statute).

Though the equitable balance did not tilt in Ms. Mitchell's favor, the dismissal order reflects the magistrate judge considered the arguments made by Ms. Mitchell about her equities, including: (1) dismissal without prejudice would result in a "highly unjust and perverse outcome" because, according to Ms. Mitchell, after advocating for the validity of the Revival Statute, she alone would be unable to pursue her claims if there were a constitutional amendment permitting legislative revival of time-barred claims; (2) if Ms. Mitchell had not dismissed her prior action, she could have dismissed this case without the court's permission; and (3) any legal prejudice to Mr. Roberts could be mitigated by Ms. Mitchell's proposed curative condition. Aplt. App. at 222. Given the record as a whole, we cannot agree with Ms. Mitchell that the magistrate judge was unaware of the policy objectives animating the Revival Statute—indeed, it appears the magistrate judge considered Ms. Mitchell's arguments precisely against that backdrop. To be sure, the magistrate judge did not focus specifically on the underpinnings of the Revival Statute. But as Ms. Mitchell acknowledges, the Utah Supreme Court's opinion, on which the magistrate judge relied, described at length the "reasonable policy basis" for the Revival Statute. *Mitchell*, ¶ 6; *see also id.* ¶¶ 50-52.

Thus, the magistrate judge properly exercised her discretion by considering the equities facing both parties before concluding Ms. Mitchell's equities "d[id] not

22

outweigh the plain legal prejudice to Mr. Roberts." Aplt. App. at 222. As the

magistrate judge observed, Ms. Mitchell may understandably consider this result

"harsh and distressing." *Id.* But, applying abuse of discretion review, we discern no

error, on balance, in the attention paid to Ms. Mitchell's equities.

**B.　　The district court did not abuse its discretion by rejecting Ms. Mitchell's proposed curative condition.**

Ms. Mitchell asked the magistrate judge to grant voluntary dismissal without

prejudice on the condition that she be "prevent[ed] . . . from refiling her claims

unless the Utah Constitution is amended to revive her claims." Aplt. App. at 207. The

magistrate judge rejected this proposal, explaining Ms. Mitchell's argument

"misse[d] the point" and the dismissal condition "d[id] nothing to prevent legal

prejudice to Mr. Roberts." *Id.* at 222. On appeal, Ms. Mitchell challenges this ruling,

contending "[r]egardless of whether [the] loss of a statute of limitations defense can

sometimes constitute legal prejudice, such a loss did not constitute legal prejudice

here, especially because of the curative condition" she proposed.[12] Opening Br. at 28

(capitalization omitted). We are not persuaded.

Rule 41(a)(2) gives the district court discretion "to dismiss an action without

prejudice 'upon such terms and conditions as the court deems proper.'" *Am. Nat'l*

*Bank*, 931 F.2d at 1412 (quoting Fed. R. Civ. P. 41(a)(2)). Commonly called curative

conditions, these are terms of dismissal "designed to alleviate any prejudice a

---

[12] To the extent Ms. Mitchell contends Mr. Roberts suffers no legal prejudice simply because the Utah Supreme Court left open the possibility of a constitutional amendment, this argument rests on a misreading of Utah law, so we reject it.

defendant might otherwise suffer upon refiling of an action." *Id.* (citation omitted). Importantly, "[t]he district court . . . should impose only those conditions which actually will alleviate [such] harm." *Id.* (citation omitted).

Typically, curative conditions include payment of a defendant's costs and fees, making discovery available in a subsequent proceeding, or refiling certain claims in another jurisdiction within a limited time. *See* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2366 (4th ed. 2022 update); *McCants*, 781 F.2d at 860 ("Where a subsequent similar suit between the parties is contemplated, expenses awarded might be limited to those incurred in discovering information and researching and pressing legal arguments that will not be useful in the later suit." (citation omitted)).

Here, Ms. Mitchell's proposed curative condition rests squarely on a misunderstanding of Utah law. According to Ms. Mitchell, the Utah Supreme Court suggested in its opinion on the certified questions that the Utah Constitution is likely to be amended to permit legislative revival of time-barred child sexual abuse claims. Under these circumstances, Ms. Mitchell reasons, her claims against Mr. Roberts should not be dismissed with prejudice but only barred "unless and until" the Utah Constitution is amended. *See* Opening Br. at 34-36.

Nothing in the Utah Supreme Court's opinion supports Ms. Mitchell's contention. Nowhere did the Utah Supreme Court suggest, as Ms. Mitchell claims, that the Utah Constitution is likely to be amended. Ms. Mitchell appears to rest her

entire argument on the phrase "unless and until," which appears twice in the opinion.

The supreme court observed:

> Our laws are written down for a reason. And a key reason is to establish clear, fixed limits that the public may rely on—*unless and until* the law is repealed or amended by established procedures for doing so. The people of Utah retain the power to amend the Utah Constitution to alter the legislature's authority in this area if they see fit. But the document as it stands (and as originally understood) forecloses the legislature's power to enact legislation that retroactively vitiates a ripened statute of limitations defense.
>
> . . . .
>
> The question presented for us, however, is not a matter of policy. We are asked to give voice to the limitations on our government established in the charter—the constitution—ratified by the voice of the people. The terms of that charter merit our respect *unless and until* they are amended or repealed. And we must enforce the original understanding of those terms whether or not we endorse its dictates as a policy matter.

*Mitchell*, ¶¶ 9, 51 (emphases added) (footnote omitted).

Ms. Mitchell's reliance on the words "unless and until" is wholly misplaced. The Utah Supreme Court used the words "unless and until" not to forecast a constitutional amendment, as Ms. Mitchell insists, but to assert an uncontroversial observation: the Utah Constitution can be amended. We also reject Ms. Mitchell's contention that an amendment is likely simply because the Utah Supreme Court endorsed the policy rationales underlying the Revival Statute. The only question resolved by the Utah Supreme Court concerned a matter of law, not policy. *Mitchell*, ¶ 51. The Utah Supreme Court's opinion simply does not stand for the proposition

25

that a constitutional amendment permitting legislative revival of child sexual abuse claims is forthcoming.[13]

In any event, the sort of open-ended curative condition offered by Ms. Mitchell—which rests on mere speculation about possible changes in Utah law—has no meaningful limiting principle. A curative condition must be tethered to the law as it stands today, not rest on conjecture about what the law might someday be.

Accordingly, we conclude the magistrate judge properly considered, and rejected, Ms. Mitchell's proposed curative condition. *See Grover*, 33 F.3d at 719 ("At the point when the law clearly dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice." (citation omitted)). Mr. Roberts has already twice been sued by Ms. Mitchell and twice asserted a valid statute of limitations defense. The curative condition proposed by Ms. Mitchell is no cure at all—it does not alleviate harm but

---

[13] In her appellate briefing, Ms. Mitchell cites various online news articles describing the prospect of Utah state legislators introducing a constitutional amendment during the 2022 legislative session. Mr. Roberts argues we should not consider these materials because they were not presented to the magistrate judge. *See* Answer Br. at 4 n.1. We agree. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (explaining our review is limited "to the materials adequately brought to the attention of the district court by the parties"); *see also Verlo v. Martinez*, 820 F.3d 1113, 1125 (10th Cir. 2016) ("We will not hold that the district court abused its discretion based on evidence not before it when it ruled." (citation omitted)). Ms. Mitchell never requested we take judicial notice of these materials, and we decline to do so sua sponte. *See* Fed. R. Evid. 201. After oral argument, the parties filed supplemental authority letters under Federal Rule of Appellate Procedure 28(j) alerting us that a proposed constitutional amendment was put to a voice vote in Utah's House of Representatives on February 10, 2022, and failed. *See* Utah H.J. Res. 4, 64th Leg., Gen. Sess. (Utah 2022).

only exposes Mr. Roberts to the possibility of a third lawsuit at some unknown time. This disrupts principles of finality and repose and avoids entirely the Utah Supreme Court's pronouncement of the property-like vested right in a statute of limitations defense. We discern no error in the magistrate judge's decision to reject such a proposal.

### III.    Conclusion

The magistrate judge did not abuse her discretion by denying Ms. Mitchell's motion for voluntary dismissal without prejudice and rejecting her proposed curative condition. Under the deferential standard that governs our review, we affirm the decision to dismiss this action with prejudice.